[Civil No. 4491.    Filed March 29, 1943.]

[135 Pac. (2d) 210.]

SUBURBAN PUMP AND WATER CO., a Corporation, Appellant, v. W. H. LINVILLE, Third Party Defendant, Appellee.

Messrs. Armstrong, Kramer, Morrison and Roche, Mr. Robert H. Armstrong and Mr. W. T. Elsing, for Appellant.

Mr. D. V. Mulhern and Mr. B. H. Gibbs, for Appellee.

McALISTER, C. J.—The plaintiff, Ruth A. Vincent, brought an action against the Suburban Pump and Water Co., a corporation, hereinafter referred to as the company, and from a judgment in favor of W. H. Linville, whom the company had brought into the case as a third party defendant, the company appeals.

The facts giving rise to the action may be stated as follows: On May 20, 1926, W. H. Linville and one Win Wylie executed the following agreement:

"This Agreement made and entered into, this 20th day of May 1926, by and between W. H. LINVILLE, party of the first part, and WIN WYLIE, party of the second part,

"Witnesseth: That the parties hereto, in consideration of One Dollar each to the*r* paid, receipt whereof is mutually acknowledged, do hereby agree and covenant as follows:

"The party of the first part, hereby grants, to the party of the second part, the right and privilege to use the north thirty feet of the south east quarter of the south west quarter of section twenty eight, T. 3 N. R. 3 E. G. & S. R. B. & M., for the purposes of developing water, opening roadway, constructing bridge,

and such other things thereto pertaining, for the term of twenty five years from date hereof.

"It is understood and agreed that the first party will be entitled to the use of water for domestice purposes, during the life of this agreement, at such times, and under such conditions as may not intefere with a fair and reasonable supply of water to buildings in section twenty eight owned by second party, or his successors.

"If at any time during the life of this Agreement, second party desires to remove any of the various equipment above referred to, he shall have the right to do so.

"*Al* taxes on improvements, cost of upkeep, and maintainance of operation to be paid for by second party hereof.

(signed) "W. H. Linville
(signed) "Win Wylie"

On June 12, 1936, Win Wylie made the following assignment of this agreement:

"Phoenix, Arizona, June 12, 1936.
"I hereby sell, assign and set over to the Suburban Pump & Water Company all of my right, title and interest in the above agreement.

(signed) "Win Wylie."

At the time of the assignment Wylie made a bill of sale to the company of the pump, pipe lines, valves, etc., on the premises, whereupon it took possession of the pumping plant, installed new equipment, and continued to supply water for domestic purposes to those whom Wylie had furnished and gradually increased its users to 84, 41 of whom were located on said section 28 and the others on adjoining land.

The record discloses also that in August, 1914, Mabel T. Norton, who later married W. H. Linville, received from the United States a patent to the S. E. ¼ of the S. W. ¼ of said section 28 and other lands and that this patent was recorded in the office of the county recorder of Maricopa County, Arizona, on Sep-

tember 23, 1914; that Mabel Linville died and in January, 1921, after her death, this 40 acres and other lands, under the law, became the property of her daughter, Ruth A. Linville, now Ruth A. Vincent, the plaintiff herein, and W. H. Linville; that in February, 1923, through a proceeding in partition in the probate court of Maricopa County, these lands were so divided that the 40 acres here involved became the property of Ruth A. Linville, and that a copy of the decree of distribution was filed in the office of the county recorder of Maricopa County on February 1, 1921, and a copy of the decree in partition on February 26, 1923.

On May 3, 1941, Ruth A. Vincent brought an action against the company to recover damages for the water it had removed from the S. E. ¼ of the S. W. ¼ of said section 28, which she alleged had a reasonable market value of $2.50 per 1,000 gallons and a total value of $8,500.

In its answer the company denied any knowledge on its part that on June 12, 1936, or any other time, plaintiff owned the land in question, but admitted erecting divers structures, wells and pumping plants on lands which W. H. Linville, father of the plaintiff, purportedly owned, the same being the land claimed by plaintiff, and that it removed drinking and domestic water therefrom and is still removing it. It denied, however, that such water had any market value at all.

The day after the answer was filed the defendant filed a cross complaint alleging that in the contract between W. H. Linville and Win Wylie the former granted to Wylie the right to take water from the north 30 feet of the 40 acres above described with the right to sink wells and construct pumping equipment thereon to develop and sell water therefrom for 25 years from that date; that on June 12, 1936, Wylie assigned his right, title and interest in

the contract to defendant and that pursuant to its terms, the defendant expended $985 in developing water and purchasing equipment for producing the same; that it did not then have, nor has it now, any knowledge as to who the owner of the land is, though when he entered into the agreement with Wylie, Linville was the duly appointed guardian of the person and property of the plaintiff under order of the superior court of Maricopa County; that at all times following June 12, 1936, plaintiff and W. H. Linville had knowledge of the acts of the defendant in developing and enriching said land and that neither of them made any objection thereto, but at all times encouraged the defendant in such activities. It prayed for judgment against the plaintiff in the sum of $985, upon the ground of unjust enrichment.

The day the answer was filed, July 2, 1941, the company, pursuant to section 21–446, Arizona Code 1939, obtained an order from the court, permitting it to bring W. H. Linville into the case as a third party defendant, and on October 4th thereafter, it filed an amended third party complaint in which it set up many of the facts alleged in the foregoing answer and cross complaint and in addition alleged that by the terms of the agreement with Wylie, Linville warranted his title to the land here involved, though it was admitted that there was no express warranty of title between the company and Wylie, except as is shown in the agreement between Linville and Wylie and as between Wylie and the company; that he represented to the defendant that he was the owner of the lands upon which the wells are located and intended when he made such representation that it should be relied upon, though he believed at the time that the lands were in fact owned by the plaintiff, Ruth A. Vincent; that defendant did rely upon this representation.

The third party complaint alleges further that Linville knew, at all times after June 12, 1936, that the defendant was in possession of the lands and expending money in sinking wells and developing water thereon, but at no time did he deny that he was the owner of said lands; that pursuant to his warranty and representation, this defendant purchased his rights in said agreement for a valuable consideration and expended the sum of $985 in improving the property to sell water therefrom; that the plaintiff contends in her complaint that she is the owner of this property and that defendant is unlawfully on said premises, and that if this contention is true, the third party defendant, W. H. Linville, is liable to the defendant for the money expended by it on the property for the development and sale of water therefrom and to the plaintiff for any judgment she may obtain against this defendant.

The third party defendant did not answer this complaint, but moved its dismissal and on the same day, July 22, 1941, served upon the company, under the provisions of section 21–735, Arizona Code 1939, certain interrogatories, the answers to which by its secretary-treasurer were filed four days later. It appears from these answers that Wylie warranted title to the pump, pipe lines, valves, etc., in the bill of sale thereto given the defendant, though he did not warrant the right of possession to the realty upon which they were located; that under the agreement between Wylie and the company the latter was to operate as a public utility corporation for the sale of domestic water on the premises; that Wylie did not suggest anything to defendant to show he did not have a good lease, easement or contract with Linville, but that the company *assumed* that Linville would not have entered into the contract with Wylie unless he had a good title, though the company does not question for a moment

that he acted in good faith; that neither Linville nor the plaintiff had any use for domestic water as provided in the agreement of May 20, 1926; that on the faith of the agreement between Linville and Wylie and that between Wylie and the defendant, the company expended a large sum of money to develop water on the premises; that it is still pumping water from the wells and has not been disturbed in its possession.

The record discloses further that on September 18, 1941, the third party defendant, under the provisions of section 21–739, Arizona Code 1939, made a request of the defendant for the admission by it of the truth of certain facts pertaining to the cause and that in reply thereto it denied many of the facts the admission of which was sought but it did admit that there was recorded in the office of the county recorder of Maricopa County the patent to Mabel T. Norton to the land in question though it denied the date thereof, September 23, 1941, which had been mistakenly specified for September 23, 1914; that there was recorded also in the recorder's office an instrument purporting to be a decree of distribution as described in the request for admissions, but it denied the entering of the decree in partition setting aside the 40 acres in question to Ruth A. Linville in fee simple and also the recordation thereof; that in placing in escrow with the Phoenix Title and Trust Company the written agreement between Wylie and the defendant company, both parties agreed to this statement:

"And the undersigned understands and agrees that the Phoenix Title & Trust Company makes no representations as to the title to the premises or personal property concerned in said instruments nor as to the sufficiency of said instruments."

On September 18, 1941, the third party defendant, pursuant to section 21–1211, Arizona Code 1939, filed a motion for summary judgment that the third party

plaintiff take nothing by its third party complaint against him, for the reason, among others, that it is plain from the proceedings and record that there existed no real, genuine issues of facts between the defendant and the third party defendant and that the defendant had no enforcible rights against the third party defendant under the agreement between the latter and Win Wylie and hence was entitled to judgment as a matter of law.

When this motion was heard, the third party defendant, pursuant to section 21–1211, *supra,* permitting the filing of affidavits in support of a motion for summary judgment in his favor, offered in evidence the affidavits of W. H. Linville and George B. McEwen, and they were received over its objection. The affidavit of the latter related wholly to the number of users of water being served by the company at that time. The affidavit of Linville was as follows:

"State of Arizona, } ss.
  County of Maricopa, }

"I, W. H. Linville, being first duly sworn, on my oath depose and say that I am the third party defendant in the above entitled cause and am the same party who, under date of May 20, 1926, executed that certain instrument to Win Wylie giving him permission to remove water from the North 30 feet of the SE¼ SW¼ of Section 28, Township 3 North, Range 3 East, Gila and Salt River Base and Meridian; that at that time there was upon said real property a well which was not being used and at the time of the execution of said instrument, Dr. Wylie owned not to exceed seven houses in said Section 28, Township 3 North, Range 3 East, adjacent to this well. He came to me and stated that he had no domestic water for his houses and that there were people living in them, some of whom were sick, and that he wanted permission to install a pump in said well to furnish domestic water for those living in his houses without pay for same. That I would not refuse anyone a drink of water, or the use of water under such circumstances so I told

him to go ahead. He then presented said instrument to me and asked me to sign it, which I did. At that time my Daughter Ruth, now Ruth A. Vincent, was some six or seven years old.

"That I know that Dr. Wylie did install the pump and use water for four to seven houses but I never had any knowledge of his attempted assignment of that written permission to the Surburban Pump & Water Company, or anyone else, until about the beginning of the present year. At the time of signing said permission, Dr. Wylie knew that my daughter owned the above-described land and it was remarked and understood that I could make no legal agreement without approval of the court in the guardianship matter. I have never had any conference or correspondence with any of the officers of the Surburban Pump & Water Company, or anyone connected with said corporation, concerning same except that after the institution of the above entitled action I did discuss the matter with Mr. Elsing, one of the attorneys for said Surburban Pump & Water Company, at his request.

(Signed) ''W. H. Linville.

"Subscribed and sworn to before me this 30th day of September, 1941.

(Signed) ''D. V. Mulhern,
''Notary Public.

Seal

"My Commission expires July 7, 1943.''

It appeared also from the pleadings, the answers to the interrogatories and from the admissions of counsel at the hearing on this motion, that the representations alleged in the third party complaint to have been made by the third party defendant to the company, were not in fact verbal statements to the defendant or to Wylie, but were solely those implied or included in Linville's act in signing the Wylie agreement of May 20, 1926. There was no contention that he made any direct, oral statements to either of them that he was the owner of the land in question.

After considering the entire record before it, the court granted the motion for summary judgment in

favor of the third party defendant, Linville, and the company appeals.

The first complaint is that the court erred in granting the motion, for the reason that the third party complaint stated a claim for relief upon the ground of equitable estoppel. It is the contention of the third party plaintiff that for the purposes of this motion, the facts set up in the third party complaint must be treated as true, the same as they were formerly in passing on a demurrer and that when measured by this standard a claim for relief was stated which called for a denial of the motion. The facts alleged in the complaint are not the sole factors to be considered in passing on the motion for summary judgment; all those shown by the record as it stands when the motion is made, or submitted, enter into the matter. Section 21–1212, Arizona Code 1939, provides that

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Securities and Exchange Commission* v. *Payne,* D. C., 35 Fed. Supp. 873; *Fletcher* v. *Krise,* 73 App. D. C. 266, 120 Fed. (2d) 809.

Whether, therefore, the cause, when considered in the light of the full record, presented any "genuine issue as to any material fact," is the question for decision. It is clear from the record that the land involved was, through the patent to her mother and the decrees in distribution and partition, the property of the plaintiff, Ruth A. Vincent, on June 12, 1936, when the assignment to the company was made by Wylie and that the proper instruments of title, showing this, had been on record many years prior to that date in the office of both the clerk of the superior court and the county recorder of Maricopa County. Appellant contends,

however, that even though this be true there is nothing in the pleadings, answers to interrogatories, admissions or affidavits, affecting the issue of fact presented by the allegations of the third party complaint upon which the third party plaintiff chiefly relies, namely, that Linville warranted his title to the land here involved; that he represented to the defendant that he was the owner of the land upon which the wells are located and intended when he made such representation that it should be relied upon and that defendant had the right to, and did, rely upon it.

The record discloses clearly that Linville made no such representations verbally to the company, but the position of the third party plaintiff is that they are implied in the word "grant" as used in the agreement of May 20, 1926, between Linville and Wylie, and that it *assumed, and was justified in assuming,* that Linville would not have used this term unless he had been in fact the owner of the land in question. If the word "grant" in that contract caused the company to act on the theory that Linville was the owner of the land and justified it in neglecting to ascertain from the public records in whom the title rested, the contention that he should be estopped from asserting contrary to the implication of the word "grant" might have some legitimate basis. But we are of the view that it had no right to assume that he was the owner, for it is as a general rule essential that the purchaser

"should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should have also been without convenient or ready means of acquiring such knowledge. One relying on an estoppel must have exercised such reasonable diligence as the circumstances of the case require. If he conducts himself with a careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of

danger or loss he cannot invoke the doctrine of estoppel.

"...

"*Record of notice of title.* A public record is available means of information as to questions of title, and one who does not take advantage of it cannot claim an estoppel against one who merely fails to furnish such information. ... " 31 C. J. S., Estoppel, § 71.

■ It is very clear from the record that Linville made no statement whatever to either Wylie or the defendant before June 12, 1936, as to his ownership of the land in question. In fact, he did not even know that Wylie had assigned the contract to defendant until about five years had passed and during all this time, and long before, the record in the office of the clerk of the superior court and the office of the county recorder showed that the daughter was the owner. The defendant did not use the means available to it to ascertain this fact and Linville did nothing whatever to prevent it from doing so and, we think, it should have examined the record before it is in a position to claim Linville is equitably estopped from showing that he is not the owner.

■ Neither could the failure of Linville to protest the improvements defendant was making on the premises amount to approval since he knew nothing whatever of them.

■ Defendant objects to the receiving in evidence of the affidavit of Linville because it contains facts that have the effect of controverting or setting aside portions of the agreement he made with Wylie. The motion for summary judgment was heard before the court and it knew the difference between the admissible and the inadmissible and the presumption is that it considered only the former.

We find no error in the judgment, and it is, therefore, affirmed.

ROSS and STANFORD, JJ., concur.