74 P.3d 276

**LUTHER CONSTRUCTION CO.,
INC., Plaintiff–Appellant,**

v.

**ARIZONA DEPARTMENT OF
REVENUE, Defendant–
Appellee.**

No. 1 CA–TX 02–0018.

Court of Appeals of Arizona,
Division 1, Department T.

Aug. 14, 2003.

Reconsideration Denied Aug. 28, 2003.

Ryan Woodrow & Rapp, PLC By Ian Macpherson, Phoenix, Attorneys for Plaintiff–Appellant.

Terry Goddard, Attorney General By Lisa A. Neuville, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

TIMMER, Judge.

¶1 In *Valencia Energy Co. v. Arizona Dep't of Revenue*, 191 Ariz. 565, 576, 578–79, ¶¶34, 41, 959 P.2d 1256, 1267, 1269–70 (1998), our supreme court held that in rare situations, the Arizona Department of Revenue ("ADOR") can be equitably estopped from assessing a tax that is legally owed by a taxpayer. We decide in this appeal whether the tax court correctly ruled as a matter of law that Luther Construction Co., Inc. cannot demonstrate such a rare situation, and summary judgment upholding ADOR's assessment of delinquent tax against Luther is therefore appropriate. Because genuine issues of material fact preclude summary judgment, we reverse and remand for further proceedings.

## BACKGROUND [1]

¶2 Luther is a general construction company based in Albuquerque, New Mexico. As part of its business, Luther contracts with the United States Bureau of Indian Affairs ("BIA") for construction projects on the Navajo reservation in Arizona. From January 1983 through September 1985, Luther paid Arizona transaction privilege tax under the prime contracting classification on gross proceeds from several BIA contracts. *See* Ariz. Rev.Stat. ("A.R.S.") §§ 42–5008 (1999 & Supp.2002) and 42–5010(A)(1)(h) (1999 & Supp.2002) (formerly A.R.S. §§ 42–1309 and –1317).

¶3 In January 1986, Luther sent a letter to ADOR requesting guidance concerning an exemption from tax for contractors and suppliers conducting business on the Navajo reservation. R. Lee McFadden, III, Admin-

---

1. We view the facts in the light most favorable to Luther as the party against whom summary judg-
ment was entered. *Valencia,* 191 Ariz. at 568, ¶2, 959 P.2d at 1259.

istrator of ADOR's Tax Policy Section, responded to Luther's inquiry by letter the next month (the "McFadden letter"), and advised Luther that income from contracting activity on a reservation is exempt if the work is performed for, and payment is received from, among others, "the [BIA] for a hospital, school, road or other similar structure constructed *for the use* of Indians on the reservation." McFadden explained that "[t]he intent behind this exemption is not to tax an activity within a reservation if it is performed for the benefit of the Indians or the tribe."

¶ 4 In August 1986, Luther filed amended returns and requests for refunds totaling $84,929.65 for transaction privilege tax paid for periods in 1983 through 1986 on proceeds from BIA contracts to construct Navajo detention centers and schools. The amended returns specified that the deductions were for "non-taxable Indian work on reservations." ADOR responded by conducting an audit for the time periods listed in the amended returns. Subsequently, in October 1987, ADOR's Refund Supervisor, Jerry Lewis, sent Luther a copy of the completed audit and a refund warrant in the full amount requested by Luther. The audit report was signed by an auditor and his supervisor and reflected that Luther's BIA contracts were "Exempt Indian Contracting." Simultaneously, a member of ADOR's Audit Services Unit, Cleva M. Totress, sent Luther a refund check, including more than $31,000 in interest. An accompanying letter stated that the refund was "made as the result of: Contracting on Indian reservations for the benefit of Indians."

¶ 5 After the 1987 audit, Luther treated as exempt gross proceeds from both BIA-funded and state school-district-funded contracts to construct reservation schools. In August 1993, ADOR assessed delinquent taxes against Luther on gross proceeds from four school-district-funded contracts earned from July 1989 through December 1992. Significantly, the written assessment sent to Luther reflected that proceeds from a BIA-funded contract to construct a school during that period were exempt from tax.

¶ 6 On October 14, 1993, Luther submitted its bid to the BIA to perform construction work on the Western Navajo Juvenile Service Center (the "Center") for a fixed price. Luther did not account for Arizona transaction privilege tax in calculating the bid. The BIA awarded Luther the Center contract on February 1, 1994 (the "1994 BIA Contract").

¶ 7 On April 21, 1995, ADOR issued transaction privilege tax ruling ("TPR") 95–11, declaring, in relevant part, that the gross proceeds derived from on-reservation construction projects funded entirely by the federal government are not exempt from the state's transaction privilege tax. Thereafter, Luther resumed its earlier practice of accounting for transaction privilege tax in its BIA contract bids.

¶ 8 On February 10, 1997, ADOR assessed Luther for delinquent transaction privilege tax on gross proceeds from the 1994 BIA Contract. The assessment amount totaled $212,832.32 in tax liability, penalties, and interest.

¶ 9 After exhausting administrative remedies to challenge the assessment, Luther appealed to the tax court. On cross-motions for summary judgment, the tax court ruled that proceeds under the 1994 BIA Contract were taxable, and that ADOR was not estopped from making the assessment. This appeal followed.

### DISCUSSION

¶ 10 Luther does not challenge the tax court's ruling that the proceeds from the 1994 BIA Contract were subject to transaction privilege tax. Rather, Luther argues the court erred by ruling as a matter of law that ADOR was not estopped from assessing this tax. As with all appeals from summary judgments, we review the tax court's ruling de novo. *Wilderness World, Inc. v. Arizona Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995).

¶ 11 In *Valencia*, the Arizona Supreme Court held that equitable estoppel may lie against a taxing authority under the following four circumstances: (1) the taxing authority engaged in affirmative conduct inconsistent with a position it later adopted

that is adverse to the taxpayer, (2) the taxpayer actually and reasonably relied on the taxing authority's prior conduct, (3) the taxing authority's repudiation of its prior conduct caused the taxpayer to suffer a substantial detriment because the taxpayer changed its position in a way not compelled by law, and (4) applying estoppel against the taxing authority would neither unduly damage the public interest nor substantially and adversely affect the exercise of governmental powers. 191 Ariz. at 576–78, ¶¶ 35–40, 959 P.2d at 1267–69.

¶ 12 The tax court ruled as a matter of law that Luther did not reasonably rely on any ADOR act to believe that proceeds from the 1994 BIA Contract were tax exempt. Because we may affirm on a different basis than relied on by the tax court, *see Varsity Gold, Inc. v. Porzio*, 202 Ariz. 355, 359, ¶ 19, 45 P.3d 352, 356 (App.2002), we address each circumstance in turn.

### A. Inconsistent acts

¶ 13 Luther contends ADOR engaged in affirmative conduct inconsistent with its position adopted in the 1997 assessment by sending to Luther (1) the McFadden letter, (2) the results of the 1987 audit with accompanying letters and refund, and (3) the 1993 assessment. ADOR concedes for purposes of the summary judgment proceedings that the McFadden letter constitutes an inconsistent act under *Valencia*, and we agree. *Id.* at 579, ¶ 43, 959 P.2d at 1270 (deciding letter from tax analyst stating transportation charges not taxable sufficient to create genuine issue that ADOR had taken position inconsistent with later claim that charges taxable). However, ADOR disputes that its 1987 and 1993 acts fall within this category.

¶ 14 In *Valencia*, the supreme court stated that inconsistent conduct sufficient to invoke equitable estoppel must be absolute, unequivocal, "bear some considerable degree of formalism under the circumstances," and be taken by or have the approval of a person authorized to act in the area. *Id.* at 577, ¶ 36, 959 P.2d at 1268. The court cautioned that the state may not generally be estopped due to the casual acts, advice, or instructions issued by non-supervisory personnel. *Id.*

¶ 15 ADOR contends the 1987 audit report, tax refund, and accompanying letters from Lewis and Totress, and the 1993 assessment, are not inconsistent acts under *Valencia* because they do not constitute sufficiently formal opinions concerning the taxability of proceeds from Luther's BIA contracts. Specifically, ADOR points out that neither the audit report, Lewis's letter, nor the 1993 assessment expressly represent that Luther's BIA contract proceeds are tax exempt. Although Totress' letter states that the refund was made because Luther "[contracted] on Indian reservations for the benefit of Indians," ADOR asserts Totress was a clerk who was not authorized to express ADOR policy.

¶ 16 We reject ADOR's contention because it rests on the mistaken premise that an inconsistent act under *Valencia* must be an explicit, written expression of ADOR's position on an issue. The court in *Valencia* held that equitable estoppel requires an affirmative inconsistent "act" that "bear[s] some considerable degree of formalism under the circumstances." *Valencia*, 191 Ariz. at 577, ¶ 36, 959 P.2d at 1268. *See also Pingitore v. Town of Cave Creek*, 194 Ariz. 261, 262–63, 265–66, ¶¶ 2–14, 23–32, 981 P.2d 129, 130–31, 133–34 (App.1998) (holding town's issuance of variety of permits and variances over time satisfied formalism requirement); *Foote's Dixie Dandy, Inc. v. McHenry*, 270 Ark. 816, 607 S.W.2d 323, 324–27 (1980) (holding field auditor's oral statements could estop state from assessing additional tax). Evidence exists that ADOR's acts in 1987 and 1993 fit this criteria.

¶ 17 The 1987 audit occurred as a result of Luther's request for a refund of taxes paid on proceeds from BIA contracts because such proceeds were tax exempt. That request came six months after McFadden had stated that such proceeds were nontaxable. The audit report, bearing an audit supervisor's approval, evidences ADOR's agreement with Luther's position on the taxability of its BIA contracts by stating moneys must be refunded due to "Exempt Indian Contracting." Although Totress may not have been a supervisory employee of ADOR, the enclosure of a significant refund check with her

letter evidences ADOR's approval of her stated reason for the refund. *Id.*

¶ 18 Luther could have viewed the audit results and refund decision as ADOR's unequivocal affirmation of its position explicitly stated in the McFadden letter that proceeds from Luther's BIA contracts were tax exempt. *See Pingitore*, 194 Ariz. at 262–63, 265–66, ¶¶ 2–14, 23–32, 981 P.2d at 130–31, 133–34; *Lesniewski v. W.B. Furze Corp.*, 308 N.J.Super. 270, 705 A.2d 1243, 1251 (App. Div.1998) ("In determining whether to apply the doctrine of equitable estoppel, we consider whether 'there was a course of conduct that, in its cumulative impact, was tantamount to a representation made by one party with the expectation that the other persons would rely on this conduct.' ") (citation omitted).

¶ 19 Finally, although ADOR assessed delinquent tax in 1993 on four of Luther's state school-district-funded construction contracts, it noted in the assessment that no tax was owed on Luther's BIA-funded construction contract. The record does not reveal that this contract differed from either the contracts at issue in the 1987 audit or the 1994 BIA Contract. Thus, absent any contrary positions communicated by ADOR from 1987 until the 1993 assessment, Luther could have viewed the assessment as affirming ADOR's previously expressed position on the taxability of proceeds from Luther's BIA contracts. *Compare Arizona Joint Venture v. Arizona Dep't of Revenue*, 205 Ariz. 50, 54, ¶ 19, 66 P.3d 771, 775 (App.2002) (holding taxpayer failed to demonstrate ADOR's conduct in prior audits inconsistent with later position because no evidence presented that prior audits factually and legally similar to later situation).

¶ 20 ADOR argues, however, that Luther could not have reasonably viewed the 1993 assessment as an unequivocal expression that proceeds from BIA contracts were tax exempt, because ADOR had publicly assumed the opposite position during the early 1990s. In 1990, ADOR assessed Blaze Construction Company, another New Mexico company performing work on Indian reservations in Arizona, for unpaid transaction privilege tax on proceeds from BIA construction contracts.

Blaze appealed the assessment to the Arizona Board of Tax Appeals in 1992, which reversed the assessment in July 1994. *Blaze Constr. Co. v. Arizona Dep't of Revenue*, No. 950–92–S, 1994 WL 539378 at *1 (Ariz. Bd. Tax App. July 18, 1994). The case proceeded through the Arizona courts and, in 1999, the United States Supreme Court upheld Arizona's ability to tax a non-Indian contractor's receipts from contracts with the federal government for construction activity on an Indian reservation. *Arizona Dep't of Revenue v. Blaze Constr. Co.*, 526 U.S. 32, 36, 119 S.Ct. 957, 143 L.Ed.2d 27 (1999).

¶ 21 If Luther knew at the time of the 1993 assessment that ADOR had assessed Blaze, and assuming Blaze's BIA contract was of the same character as Luther's BIA contracts, Luther could not have viewed the 1993 assessment as ·ADOR's absolute, unequivocal, and formal statement of its position on the taxability of proceeds from BIA contracts. But Luther denies knowing of ADOR's conflict with Blaze, and the first published disposition in the case occurred in July 1994, after Luther had entered in the 1994 BIA Contract. Although ADOR expresses doubt about Luther's claimed ignorance of the Blaze audit and assessment, the trier-of-fact must determine the credibility of Luther's position.

¶ 22 ADOR additionally asserts that the 1993 assessment is not an inconsistent act as it merely reflects a decision to refrain from using limited resources to pursue taxing Luther's BIA-funded school construction contract. According to ADOR, it may have elected to use its resources to pursue Blaze rather than assess Luther for delinquent tax on proceeds from the BIA contract. While ADOR may have elected not to tax proceeds from Luther's BIA contract for cost-savings reasons, it did not communicate this intention in the 1993 assessment. *See Valencia*, 191 Ariz. at 579, ¶ 43, 959 P.2d at 1270 (deciding whether ADOR letter was an inconsistent act by considering how taxpayer could have viewed the letter). Consequently, ADOR's unexpressed reasons for not taxing Luther's BIA contract in the 1993 assessment has no bearing on whether that assessment was an inconsistent act under *Valencia*.

¶ 23 In summary, we hold that the McFadden letter and the 1987 audit and refund, with attendant letters, evidence positions taken by ADOR that were inconsistent with its later decision to tax the proceeds from the 1994 BIA Contract. However, whether the 1993 assessment also falls within this category must be decided by the trier-of-fact.

## B. Reliance

¶ 24 Luther next argues the tax court erred by ruling as a matter of law that Luther could not have reasonably relied on ADOR's prior acts to believe that proceeds from the 1994 BIA Contract were tax exempt. Because ADOR agrees that a material issue of disputed fact exists concerning Luther's actual reliance on any ADOR acts, we address only the reasonableness of any such reliance.

¶ 25 Luther reasonably relied on ADOR's prior acts if Luther acted in good faith by providing ADOR with correct information at the time of those acts, and Luther neither knew nor was placed on notice that ADOR's position had changed since those acts. *Valencia,* 191 Ariz. at 577, ¶ 37, 959 P.2d at 1268. Luther's reliance was not reasonable if it acted "with careless indifference to means of information reasonably at hand" or ignored highly suspicious circumstances that should have warned it of ADOR's change in position. *Id.* (quoting *Suburban Pump & Water Co. v. Linville,* 60 Ariz. 274, 283, 135 P.2d 210, 214 (1943)).

¶ 26 ADOR asserts, and the tax court agreed, that Luther's seven-year reliance on the McFadden letter was unreasonable as a matter of law in light of court cases and department actions that occurred since 1986 and cast doubt on ADOR's ongoing adherence to that letter. Luther counters that these events were insufficient to establish as a matter of law that it did not reasonably rely on the McFadden letter. Additionally, Luther argues the court erred by discounting the cumulative effect of the McFadden letter, the 1987 audit and refund, and the 1993 assessment when it considered the impact of the cases and department actions cited by ADOR.

### Court cases

¶ 27 In *Valencia,* the supreme court stated that a taxpayer's reliance is not reasonable "if the law clearly precluded its theory of nontaxability." 191 Ariz. at 580, ¶ 46, 959 P.2d at 1271. ADOR does not contend that any law "clearly precluded" Luther's position at the time it bid for the 1994 BIA Contract. Indeed, the tax court noted that the law was "particularly muddled" and in conflict at the time Luther bid for the 1994 BIA Contract. Instead, ADOR points to the Supreme Court's opinion in *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 109 S.Ct. 1698, 104 L.Ed.2d 209 (1989), and this court's opinion in *Peabody Coal Co. v. State,* 158 Ariz. 190, 761 P.2d 1094 (App.1988), as evidence of evolving case law in the late 1980s that placed Luther on notice that ADOR may have retreated from the position expressed in the McFadden letter.

¶ 28 In both *Cotton Petroleum* and *Peabody Coal,* the courts held that federal law did not preempt the state from taxing proceeds earned by non-Indians which had extracted natural resources from reservation lands pursuant to tribal leases and then sold the resources to non-Indians. *Cotton Petroleum,* 490 U.S. at 166, 186, 109 S.Ct. 1698 (upholding New Mexico's oil and gas severance tax on proceeds earned from on-reservation oil production by a non-Indian lessee); *Peabody Coal,* 158 Ariz. at 196–97, 761 P.2d at 1100–01 (deciding income from non-Indian lessee's coal mining activities on reservation subject to transaction privilege tax). Each court reached its decision after balancing the states' interest in imposing the tax against the impact of the tax on the tribes. *Cotton Petroleum,* 490 U.S. at 187, 109 S.Ct. 1698; *Peabody Coal,* 158 Ariz. at 196–97, 761 P.2d at 1100–01. Neither case dealt with nor commented upon a state's ability to tax proceeds from a contract with the federal government for work performed on an Indian reservation for the benefit of Indians—the issue addressed in the McFadden letter. That issue was not finally resolved until 1999, when the Supreme Court issued its opinion in *Blaze Constr.,* 526 U.S. at 36, 119 S.Ct. 957.

¶ 29 Although *Cotton Petroleum* and *Peabody Coal* may have spurred ADOR to change its position concerning the taxability of Luther's BIA contracts, evidence exists that ADOR adhered to the position expressed in the McFadden letter despite these decisions. To begin, McFadden sent his letter while the taxpayer's lawsuit against ADOR in *Peabody Coal* had been pending for approximately three years. *Peabody Coal,* 158 Ariz. at 191, 761 P.2d at 1095. In light of this timing, a reasonable inference exists that McFadden emphasized ADOR's intent to refrain from taxing on-reservation activities for the benefit of Indians or a tribe, *see supra* ¶ 3, in order to distinguish non-taxable contracts from the type at issue in *Peabody Coal.* 158 Ariz. 190, 761 P.2d 1094. Moreover, eighteen months after the superior court in *Peabody Coal* rejected the taxpayer's federal preemption argument and entered judgment for ADOR, 158 Ariz. at 192, 761 P.2d at 1096, ADOR conducted the 1987 audit and granted Luther's refund request. In light of these acts, Luther could have reasonably believed that ADOR's position on the taxability of BIA construction contracts was unaffected by *Peabody Coal.* Likewise, when ADOR continued to distinguish BIA-funded contracts from state school-district-funded contracts in the 1993 assessment, Luther could have reasonably believed that ADOR's position remained unaffected by *Peabody Coal* and *Cotton Petroleum.*

¶ 30 Other case law issued in the 1980s strengthened any belief by Luther that ADOR distinguished BIA-funded construction contracts for the benefit of Indians from other contracts involving reservation activities. In *Ramah Navajo School Board, Inc. v. Bureau of Revenue,* 458 U.S. 832, 840–41, 846–47, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982), the Court held that the federal government's comprehensive regulation of Indian school construction, and its express policy of encouraging tribal self-sufficiency in the area of education, preempted New Mexico's tax on proceeds from a contract between a non-Indian and an Indian school district for construction of a reservation school. *See also White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 148, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) (holding federal regulatory scheme for harvesting Indian timber so "pervasive" that it precluded state tax against non-Indian's proceeds from harvesting timber on reservation pursuant to contract with tribal enterprise).

¶ 31 Luther could have reasonably believed that ADOR considered BIA-funded contracts to construct structures on reservations for the use by Indians to be more like the contracts in *Ramah* and *White Mountain Apache Tribe* than the contracts in *Peabody Coal* and *Cotton Petroleum.* This is particularly so in light of the trust function exercised by the BIA for the benefit of tribes and tribal land. *See United States v. Mitchell,* 463 U.S. 206, 224–26, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Indeed, the tax court in this case surmised that ADOR's decisions in the 1987 audit and the 1993 assessment were "likely ... made as accommodations to taxpayers in light of *Ramah* ... and its progeny."

¶ 32 On this record, we are unable to say as a matter of law that *Cotton Petroleum* and *Peabody Coal,* standing alone, placed Luther on notice that ADOR had changed its position since the McFadden letter and the 1987 audit and refund. The record does not reflect either the extent of federal regulation of tribal detention centers in the late 1980s and early 1990s or the state's interest in taxing the construction of such centers during that time period. Such evidence would reveal whether Luther's BIA contracts were more like the contracts in *Cotton Petroleum* and *Peabody Coal* or the contracts in *Ramah* and *White Mountain.* After considering such evidence, together with the impact of ADOR's actions taken after *Cotton Petroleum* and *Peabody Coal,* the trier-of-fact must decide whether Luther's continuing reliance on the position expressed in the McFadden letter was reasonable.

### Other ADOR actions

¶ 33 ADOR also contends that any reliance by Luther on the McFadden letter, the 1987 audit and refund, and the 1993 assessment was unreasonable as a matter of law in light of (1) ADOR's issuance of two transaction privilege tax rulings in 1989, (2) ADOR's

audits of other non-Indian taxpayers in the late 1980s and early 1990s, including Blaze, which resulted in assessments of unpaid taxes on proceeds from on-reservation business activities, (3) New Mexico's assessment of delinquent taxes against Blaze in the late 1980s, which New Mexico's supreme court upheld, and (4) ADOR's partial retreat from the McFadden letter by assessing delinquent tax on proceeds from Luther's school-district-funded contracts in the 1993 assessment. We disagree that these events made Luther's reliance unreasonable as a matter of law.

¶ 34 The 1989 transaction privilege tax rulings stated only that transaction privilege tax applied to proceeds from retail sales and leasing activities conducted on reservations by non-Indians. ADOR waited until 1995 to issue a transaction privilege tax ruling that such tax applied to proceeds from federal contracts with non-Indians to construct on-reservation structures for use by Indians, *see supra* ¶ 7. Because the 1989 rulings did not expressly address contracts like the 1994 BIA Contract, and in light of ADOR's statement in the 1993 assessment that no tax was owed on Luther's BIA contract, the 1989 tax rulings did not establish as a matter of law that Luther's reliance was unreasonable.

¶ 35 Likewise, the positions ADOR assumed in audits of other taxpayers did not necessarily make Luther's reliance unreasonable. The record before us does not reflect, and ADOR does not suggest, that the results of these audits were generally available to the public at the time Luther bid for the 1994 BIA Contract. All published court decisions concerning these audits occurred after that time. Therefore, we cannot say on this record that Luther acted with "careless indifference to means of information reasonably at hand," making its reliance on ADOR's acts unreasonable as a matter of law. *Valencia*, 191 Ariz. at 580, ¶ 45, 959 P.2d at 1271. Instead, the trier-of-fact must determine if Luther knew about ADOR's audits of other taxpayers at the time Luther bid for the 1994 BIA Contract, and whether any knowledge made Luther's continuing reliance on ADOR's position expressed in the McFadden letter unreasonable.

¶ 36 New Mexico's assessment of delinquent tax against Blaze on proceeds from its BIA construction contract also did not necessarily place Luther on notice that ADOR may have assumed a similar position. *Blaze Constr. Co. v. Taxation & Revenue Dep't,* 117 N.M. 362, 871 P.2d 1368, 1369 (App.1993), *rev'd* 118 N.M. 647, 884 P.2d 803 (1994). First, Luther denies knowing about the assessment. Second, we do not discern why a taxpayer, as a matter of law, should question ADOR about a previously expressed position merely because a neighboring state had assumed the opposite stance. Third, one month before Luther submitted its bid for the 1994 BIA Contract, the New Mexico Court of Appeals ruled that New Mexico could *not* tax the proceeds from Blaze's BIA contract. *Id.* Under these circumstances, New Mexico's assessment against Blaze does not establish as a matter of law that Luther's reliance on ADOR's acts was unreasonable.

¶ 37 Finally, ADOR's departure from the McFadden letter in the 1993 assessment by imposing delinquent tax on proceeds from Luther's state school-district-funded construction contracts did not necessarily signal ADOR's complete departure from that letter. The finder-of-fact could reasonably conclude that ADOR's treatment of Luther's BIA contract in that assessment as tax exempt made Luther's continuing reliance reasonable.

¶ 38 In summary, material issues of disputed fact exist about whether Luther actually and reasonably relied upon the McFadden letter, the 1987 audit and refund, and the 1993 assessment.

**C. Legal detriment**

¶ 39 Luther contends it suffered a substantial detriment from ADOR's repudiation of its prior conduct by losing the opportunity to pass the tax to the BIA in the 1994 BIA Contract. ADOR disputes this contention by arguing that Luther has not shown that it would have been able to pass the tax to the BIA in a winning bid. ADOR misconstrues Luther's burden.

¶ 40 Luther need not prove that it would have successfully passed the tax to the BIA. Rather, Luther can satisfy its burden by

demonstrating that it may have passed this tax to the BIA and suffered a substantial detriment by not doing so. *Valencia,* 191 Ariz. at 578, ¶ 39, n. 18, 959 P.2d at 1269, n. 18 (quoting *Duhame v. State Tax Comm'n,* 65 Ariz. 268, 281, 179 P.2d 252, 260 (1947)) (citation omitted) (noting possibility that contractor/taxpayer "might have passed this tax" to government may be sufficient detriment). Luther presented evidence that it had included transaction privilege tax in its BIA bids both before the McFadden letter and after ADOR issued TPR 95-11. The trier-of-fact must determine whether Luther would have similarly calculated its bid for the 1994 BIA Contract had it known of ADOR's position, and was harmed by not doing so.

■ ¶ 41 Luther also asserts it suffered a substantial detriment by paying $212,832.32 in delinquent tax, penalties, and interest as a result of the 1997 assessment. But as ADOR notes, payment of tax legitimately owing, together with non-punitive interest, is not a "substantial detriment." *Valencia,* 191 Ariz. at 577–78, ¶ 38, 959 P.2d at 1268–69. Luther was assessed a penalty of $16,598.30 by ADOR. The trier-of-fact must decide whether Luther suffered a substantial detriment as a result of this payment.

### D. Public interest and exercise of governmental powers

¶ 42 Luther finally contends that applying estoppel in this case would neither threaten undue damage to the public interest nor substantially and adversely affect the exercise of government powers. Specifically, Luther points out that ADOR's inability to collect $212,832.32 from Luther would not threaten the state's solvency or its ability to impose future assessments. *Id.* at 581, ¶¶ 53–54, 959 P.2d at 1272 (holding no undue damage to public interest by not collecting $5 million from taxpayer and no substantial and adverse effect on taxing authority as estoppel ruling retroactive).

¶ 43 ADOR counters that applying estoppel here would substantially and adversely affect ADOR's ability to best use its limited resources. According to ADOR, any affirmative, inconsistent acts taken by it in 1987 and 1993 reflect only ADOR's decision to concentrate its resources on defending and pursuing assessments against other taxpayers, including Blaze, rather than pursue Luther. ADOR contends that this course of action permitted the orderly development of law governing taxation of activities on Indian reservations. If ADOR is estopped from assessing delinquent tax as a result of that strategy, ADOR asserts it will be forced to contest every case or risk waiving its right to collect future tax.

■ ¶ 44 We are mindful of our supreme court's admonition that estoppel should be applied against the government "with utmost caution and restraint" and in the rare situation as "the policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." *Id.* at 578–79, ¶ 41, 959 P.2d at 1269–70 (citation omitted). We cannot say on this record whether application of estoppel against ADOR would substantially and adversely affect its ability to efficiently impose and collect tax. This determination must be made after all issues of fact are resolved, and the tax court has a clear picture of events. Only then can that court ascertain whether application of estoppel against ADOR would unduly damage the public interest or substantially and adversely affect the exercise of governmental powers.

### REQUEST FOR ATTORNEYS' FEES

¶ 45 Luther requests an award of attorneys' fees pursuant to A.R.S. § 12–348(B) (2003). That provision permits an award of fees to a taxpayer who prevails by an adjudication on the merits in a challenge to a tax assessment. We deny Luther's request as it has not yet prevailed on the merits of its claim. *Columbia Parcar Corp. v. Arizona Dep't of Transp.,* 193 Ariz. 181, 185, ¶ 20, 971 P.2d 1042, 1046 (App.1999).

### CONCLUSION

¶ 46 For the foregoing reasons, we hold that genuine issues of material fact preclude summary judgment on Luther's estoppel claim. We therefore reverse and remand for further proceedings.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge and A. FRED NEWTON, Judge Pro Tempore.*