NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARICOPA COUNTY, *Plaintiff/Appellee*,

*v.*

TARIQ M. RANA, et al., *Defendants/Appellants*.

No. 1 CA-CV 18-0256
FILED 2-25-2020

---

Appeal from the Superior Court in Maricopa County
No. CV 2017-012602
The Honorable Randall H. Warner, Judge

**AFFIRMED IN PART, REVERSED IN PART; REMANDED**

---

COUNSEL

Scharff PLC, Phoenix
By Spencer G. Scharff
*Counsel for Defendants/Appellants*

Maricopa County Attorney's Office, Civil Services Div., Phoenix
By Wayne J. Peck, Joseph Branco, D. Chad McBride
*Counsel for Plaintiff/Appellee*

Arizona Center for Disability Law, Tucson
By Rose A. Daly-Rooney, Maya S. Abela
*Counsel for Amicus Curiae*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**B R O W N**, Judge:

¶1        Tariq M. and Shahnaza Rana ("Ranas"), and their lessee, Ascend Behavioral Health and Wellness, LLC ("Ascend"),[1] appeal the superior court's judgment granting Maricopa County's request to permanently enjoin alleged violations of the County's zoning ordinance ("MCZO") relating to group homes.  In a separate opinion filed herewith, we address whether the injunction entered against the Ranas was overbroad.  As stated in the opinion, we vacate the judgment and remand for entry of a revised injunction.  In this memorandum decision, we address whether the court erred in finding that (1) the Ranas failed to establish estoppel; (2) the group home ordinance is not unconstitutionally vague; (3) the residents living in the Ranas' group home were not indispensable parties; and (4) discovery sanctions were not justified.  For the following reasons, we affirm those rulings.

**BACKGROUND**

¶2        The Ranas own a nine-bedroom house located on 1.25 acres in an unincorporated area of the County where group homes are an as-of-right use.  *See* MCZO §§ 201, 501.2(4), 503.  The MCZO defines a "group home" in part as a "dwelling unit shared as their primary residence by minors, handicapped or elderly persons, living together as a single housekeeping unit, in a long term, family-like environment in which staff persons provide on-site care, training, or support for the residents."  MCZO § 201.  In 2014, the Ranas submitted a land use application to the County to use their house as a group home ("the Home").  The County approved the request, noting that "group homes" are allowed in a zoning district where the Home is located, subject to compliance with applicable MCZO regulations.

---

[1]        For ease of reference, we refer to the Ranas and Ascend collectively as "the Ranas," unless otherwise noted.

¶3          In 2017, the County issued a "Notice and Order to Comply" alleging the Ranas were operating "a group home for adjudicated persons or a drug rehabilitation home without a special use permit" in violation of the MCZO.  Several months later, the Ranas entered into a compliance agreement with the County.  Noting the existing violation, the County approved a subsequent application by the Ranas to operate a group home for the disabled, subject to several conditions.

¶4          After an inspection several weeks later, the County informed the Ranas they were again violating the MCZO for failure to comply with the terms of the second zoning approval.  The County then initiated this enforcement action against the Ranas under A.R.S. § 11-815(H), which allows a county attorney to seek an injunction to "prevent, abate or remove" any use or proposed use of land that violates a zoning ordinance.

¶5          Following an evidentiary hearing, the superior court ruled in favor of the County and ultimately entered a final judgment permanently enjoining the Ranas from operating the group home in violation of the MCZO.  The court stayed the injunction pending appeal, subject to several conditions, including the prohibition of (1) any on-site staff meetings for employees other than those working at the Home and (2) any non-emergency "in-home treatment," which the court "defined as any physical, psychological, or mental health treatment or therapy from any licensed professional."

## DISCUSSION

¶6          We accept the superior court's factual findings unless they are clearly erroneous, *Nordstrom, Inc. v. Maricopa Cty.*, 207 Ariz. 553, 558, ¶ 18 (App. 2004), but review its legal conclusions de novo, *see City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 182, ¶ 27 (App. 2008).

### A.      Equitable Estoppel

¶7          The Ranas argue the County is equitably estopped from enforcing the MCZO against them.  Because application of estoppel is a question of fact, we defer to the implicit findings of the superior court "so long as they are not clearly erroneous, even if substantial conflicting evidence exists." *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cty.*, 208 Ariz. 532, 537, ¶ 10 (App. 2004).

¶8          To prevail on their claim of equitable estoppel, the Ranas were required to prove (1) the County engaged in affirmative conduct inconsistent with this enforcement action; (2) the Ranas actually and

3

reasonably relied on that conduct; (3) the County's repudiation of its past conduct caused them substantial detriment; and (4) applying estoppel would not unduly damage the public interest or adversely affect the exercise of governmental powers. *See Luther Const. Co., Inc. v. Ariz. Dep't of Rev.*, 205 Ariz. 602, 604–05, ¶ 11 (App. 2003). The kind of prior "inconsistent conduct sufficient to invoke equitable estoppel must be absolute, unequivocal, 'bear some considerable degree of formalism under the circumstances,' and be taken by or have the approval of a person authorized to act in the area." *Id.* at 605, ¶ 14 (citation omitted).

¶**9** The Ranas rely on *Pingitore v. Town of Cave Creek*, 194 Ariz. 261 (App. 1998), for their contention that the County has engaged in affirmative conduct inconsistent with its current position that, as operated by Ascend, the Home lacks a "family-like environment." There, the town sought to halt the construction of the plaintiffs' residence, objecting to their proposed construction site. *Id.* at 265, ¶ 23. We concluded that the town's "issuance of stop-work orders" was inconsistent with its prior approval of "a variety of permits and variances . . . that were necessary for the [plaintiffs] to build at their desired location." *Id.* at ¶ 25. The Ranas contend their case is even clearer than *Pingitore* based on the County's approval of their two land use applications.

¶**10** In *Pingitore*, however, the plaintiffs had repeatedly informed the Town of the location of their construction site—the precise act that the town had later sought to prevent. *See, e.g., id.* at 262–63, ¶¶ 2, 5, 7–9. And despite knowing the location of the site, the Town's response to the plaintiffs' permit application "did not implicate" the site placement. *Id.* at 265, ¶ 25. Unlike the plaintiffs in *Pingitore*, the Ranas' applications informed the County only that the Ranas intended to operate a group home, first for the elderly and then for disabled persons. The applications did not, however, inform the County that Ascend would hold company-wide staff meetings at the Home or that it would transport residents of other facilities to the Home. Because the County never took an absolute, unequivocal, position as to whether these two practices violated the MCZO, the Ranas fail to establish estoppel's first element. The superior court did not abuse its discretion in finding that the Ranas failed to establish estoppel.

## B. Vagueness

¶**11** The Ranas assert that the failure of the MCZO to define "family-like environment" renders the phrase unconstitutionally vague because it does not provide fair notice of what is prohibited and invites arbitrary enforcement. Recognizing that the group home provision may

4

require some interpretation, the County argues nonetheless it should not be considered void for vagueness.

¶12 A "vague law is no law at all." *U.S. v. Davis*, 139 S. Ct. 2319, 2323 (2019). Such a law violates due process because it fails to provide fair warning about what conduct it prohibits such that it invites arbitrary and discriminatory enforcement. *State v. Cotton*, 197 Ariz. 584, 590, ¶ 19 (App. 2000); *see also Davis*, 139 S. Ct. at 2325 ("Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide."). Accordingly, so long as the law is reasonably clear about what it prohibits, we will not strike it down for vagueness simply because there is some potential for arbitrary enforcement. *State v. Burke*, 238 Ariz. 322, 328–29, ¶ 16 (App. 2015). A law is typically not unconstitutionally vague if its meaning may be ascertained "by common understanding and practices," *State v. Cota*, 99 Ariz. 233, 236 (1965), rather than "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings," *see U.S. v. Williams*, 553 U.S. 285, 306 (2008) (citing statutory criteria such as "annoyance" or "indecency").

¶13 We first note that because our interpretation of the MCZO does not rely on County employees' testimony describing informal working definitions of terms in the MCZO, we do not consider the Ranas' vagueness arguments that are premised on these internal definitions.

¶14 Though enforcing the MCZO may require some analysis, it is not unconstitutionally vague. The MCZO provides fair warning of what it requires: residents of a group home must live in a family-like environment. The meaning of that phrase has been explained in the opinion. The Ranas have not cited, nor has our research revealed, any case where a court found that phrase void for vagueness. Unlike "wholly subjective" standards, the group home definition does not depend entirely on personal notions but instead on objective facts about a home's living arrangement and community impact. Common understandings, experiences, and practices give a reasonable person the ability to ascertain what conduct might be prohibited. Accordingly, the Ranas' vagueness challenge fails.

## C. Failure to Join Indispensable Parties

¶15 The Ranas argue that the County's failure to join the Home's residents as parties renders any judgment void under Arizona Rule of Civil

Procedure ("Rule") 19(a), an issue raiseable for the first time on appeal. *Gerow v. Covill*, 192 Ariz. 9, 14, ¶ 19 (App. 1998).

¶16            To resolve this issue, we must decide if each of the Home's residents was a "required party" under Rule 19(a)(1). *Id.* at 15, ¶ 22. Because joining the residents would not deprive the court of subject-matter jurisdiction, if each resident is a "required party," their absence "is a jurisdictional defect and deprives the court of the power to adjudicate as between the parties already joined." *See Connolly v. Great Basin Ins. Co.*, 6 Ariz. App. 280, 284 (1967). The Ranas do not argue that the residents' presence in the lawsuit was required under Rule 19(a)(1)(A) or Rule 19(a)(1)(B)(ii); therefore, we need only determine whether the residents "claim[] an interest relating to the subject of the action and [are] so situated that disposing of the action" in their absence will impede their ability to protect that interest. Ariz. R. Civ. P. 19(a)(1)(B)(i). The Ranas specifically assert that the residents' absence from the case has prevented the residents from protecting their interest in their home and avoiding "the emotional, psychological harm they would suffer from their eviction."

¶17            Assuming the residents' interest in the manner in which Ascend used the group home before the injunction issued is cognizable under Rule 19, their absence does not require reversal because that is the same interest that the Ranas and Ascend have sought to defend. It is unreasonable to conclude the Ranas and Ascend would not seek to vigorously defend against the injunction or to make all arguments against it. *Cf. Shermoen v. U.S.*, 982 F.2d 1312, 1318 (9th Cir. 1992); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558–60 (9th Cir. 1990). The County's failure to join the residents therefore created no jurisdictional defect because the residents were not required parties.

### D.     Expenses as a Sanction for Failure to Admit

¶18            The Ranas argue the superior court erred by declining to sanction the County under Rule 37(e) for failing to admit two of the Ranas' requests for admission. Specifically, the Ranas assert the County's refusals to admit (1) that all of the residents had a serious mental illness and (2) that seriously mentally ill persons can live in a "family-like environment" were not justified by any reason listed under Rule 37(e). The County asserts that the court's decision was within its discretion.

¶19            "If a party fails to admit what is requested under Rule 36 and if the requesting party later proves the matter true," the court must order the "non-admitting party [to] pay the reasonable expenses . . . incurred in

making that proof" upon the motion of the requesting party unless: (1) the request is "objectionable under Rule 36(a)"; (2) the admission "was of no substantial importance"; (3) the non-admitting party had reasonable grounds to believe "it might prevail on the matter"; or (4) "other good reason." Ariz. R. Civ. P. 37(e). We review decisions under Rule 37 for an abuse of discretion. *Furrh v. Rothschild*, 118 Ariz. 251, 255 (App. 1978).

¶20 The County refused to admit or deny that all the Home's residents were seriously mentally ill, asserting that "medical records . . . are confidential and [the County] does not have access to the information necessary to form a response." The superior court found this was a "good reason" under Rule 37(e)(4). Contending that the court abused its discretion, the Ranas point out that the County's verified amended complaint explicitly alleged that the residents were "classified by the State of Arizona as 'seriously mentally ill.'" But the complaint alleged only that the residents are considered seriously mentally ill by the State, and the County did not purport to have knowledge of whether this classification was, in fact, accurate. The court thus acted within its discretion in concluding the County's lack of access to confidential medical records was a "good reason" to decline to take a definitive position on the matter in a legal proceeding. Ariz. R. Civ. P. 37(e)(4).

¶21 The County also failed to admit or deny whether individuals with serious mental illness can live in a family-like environment, asserting the question "call[ed] for a medical diagnosis and because the response can differ from person to person." The superior court denied sanctions because this admission was not of substantial importance to the case under Rule 37(e)(2). Because the disposition of the enforcement action turned on whether the residents actually lived in a "family-like environment," the court did not abuse its discretion in finding that the County's opinion of whether, in the abstract, seriously mentally ill individuals can do so was "of no substantial importance." Ariz. R. Civ. P. 37(e)(2).

### E. Fair Housing Act

¶22 As interpreted by the County, the Ranas contend the group home ordinance "violates the [federal] Fair Housing Act because its state-license requirement has a disparate impact on individuals with serious mental illness." *See* 42 U.S.C. §§ 3602, 3604. According to the Ranas, the County's position that a behavioral health residential facility cannot constitute an as-of-right group home unlawfully excludes individuals with a serious mental illness from benefitting from group-home living. For the reasons explained in our separate opinion, we conclude that Ascend is not

precluded from offering its residents on-site individual and group counseling, which means that its seriously mentally ill residents are not categorically excluded from living in an as-of-right group home. They can continue living in the Home subject to compliance with our opinion and other pertinent provisions of the MCZO. Accordingly, we do not address the Ranas' claim that the County's interpretation of the ordinance violates the Fair Housing Act.

### F. Issues Related to Remand

¶23 The Ranas argue the equities weighed against injunctive relief because other remedies were available and the injunction harms both the residents and the public interest. In response, the County asserts that A.R.S. § 11-815(H) does not permit the superior court discretion to decline to issue an injunction once the County established a violation of the MCZO.

¶24 The Ranas' contention relating to balancing of the equities relies on asserted consequences of the injunction that are no longer at issue, such as eviction of the residents. Thus, we do not address that argument. For purposes of our remand, however, we address whether the superior court lacked any discretion to consider alternative remedies. We reject the County's argument that the court had no discretion. As the County admits, the violations alleged here were not nuisances per se because use of the Home (as a group home) would have been an as-of-right use in different areas of the County. *See* MCZO §§ 804, 805, 901; *City of Tucson*, 218 Ariz. at 187, ¶ 53 (A nuisance per se is an act, occupation, or structure that is a nuisance whenever and wherever it is found). If a violation does not constitute a nuisance per se, courts may "balance the equities in deciding whether to enjoin a zoning violation." *Id.* at 187, ¶ 55.

¶25 The Ranas also contend that the injunction failed to meet the specific requirements of Rule 65(d)(1). They assert that vague language in the judgment makes it impossible to tell what is forbidden and what is required. Because we are vacating the injunction and remanding for entry of a new injunction that prohibits staff meetings and use of the Home for functions or care involving residents from other facilities, the Ranas' argument is moot.

### G. Attorneys' Fees and Costs

¶26 The Ranas request an award of attorneys' fees incurred on appeal pursuant to A.R.S. §§ 12-341.01, 12-348, and 12-349. The Ranas have not explained how § 12-341.01 applies here. Regardless, because both parties have been partially successful on appeal, neither is the prevailing

party for purposes of awarding fees under § 12-341.01 or 12-348, or for purposes of awarding taxable costs. We deny the Ranas' request for attorneys' fees made under § 12-349 because nothing in this appeal merits sanctions.

## CONCLUSION

¶27 Based on the foregoing, we affirm the portion of the superior court's ruling addressing estoppel, vagueness, discovery sanctions, and indispensable parties. As stated in the opinion, we vacate the court's judgment and remand for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED: AA