# ARIZONA DEPARTMENT OF REVENUE *v.* BLAZE CONSTRUCTION CO., INC.

No. 97–1536.   Argued December 8, 1998—Decided March 2, 1999

Thomas, J., delivered the opinion for a unanimous Court.

*Patrick Irvine*, Assistant Attorney General of Arizona, argued the cause for petitioner. With him on the briefs were *Grant Woods*, Attorney General, *C. Tim Delaney*, Solicitor General, and *Carter G. Phillips*.

*Beth S. Brinkmann* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Waxman, Assistant Attorney General Schiffer, Deputy Solicitor General Kneedler, Roy W. McLeese III*, and *Elizabeth Ann Peterson*.

*Bruce C. Smith* argued the cause for respondent. With him on the brief was *Lat J. Celmins.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the State of California et al. by *Daniel E. Lungren*, Attorney General of California, and *Thomas F. Gede*, Special Assistant Attorney General, and by the Attorneys General for their respective States as follows: *Gale A. Norton* of Colorado, *Robert A. Butterworth* of Florida, *Alan G. Lance* of Idaho, *Thomas J. Miller* of Iowa, *Frank J. Kelley* of Michigan, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *Dennis C. Vacco* of New York, *Heidi Heitkamp* of North Dakota, *Mark Barnett* of South Dakota, *Jan Graham* of Utah, and *James E. Doyle* of Wisconsin; and for the National Conference of State Legislatures et al. by *Richard Ruda* and *James I. Crowley*.

Briefs of *amici curiae* urging affirmance were filed for the Gila River Indian Community by *Rodney B. Lewis;* for the Navajo Nation by *Marcelino R. Gomez;* for the San Carlos Apache Indian Tribe by *Richard T. Treon;* and for Frank Adson et al. by *Tracy A. Labin* and *Melody L. McCoy.*

JUSTICE THOMAS delivered the opinion of the Court.

In *United States* v. *New Mexico,* 455 U. S. 720 (1982), we held that a State generally may impose a nondiscriminatory tax upon a private company's proceeds from contracts with the Federal Government. This case asks us to determine whether that same rule applies when the federal contractor renders its services on an Indian reservation. We hold that it does.

I

Under the Federal Lands Highways Program, 23 U. S. C. §204, the Federal Government finances road construction and improvement projects on federal public roads, including Indian reservation roads. Various federal agencies oversee the planning of particular projects and the allocation of funding to them. §§202(d), 204. The Commissioner of Indian Affairs has the responsibility to "plan, survey, design and construct" Indian reservation roads. 25 CFR §170.3 (1998).

Over a several-year period, the Bureau of Indian Affairs contracted with Blaze Construction Company to build, repair, and improve roads on the Navajo, Hopi, Fort Apache, Colorado River, Tohono O'Odham, and San Carlos Apache Indian Reservations in Arizona. Blaze is incorporated under the laws of the Blackfeet Tribe of Montana and is owned by a member of that Tribe. But, as the company concedes, Blaze is the equivalent of a non-Indian for purposes of this case because none of its work occurred on the Blackfeet Reservation. Brief in Opposition 2, n. 1; see *Washington* v. *Confederated Tribes of Colville Reservation,* 447 U. S. 134, 160–161 (1980).

At the end of the contracting period, the Arizona Department of Revenue (Department) issued a tax deficiency assessment against Blaze for its failure to pay Arizona's transaction privilege tax on the proceeds from its contracts with the Bureau; that tax is levied on the gross receipts of compa-

nies doing business in the State.[1]   See Ariz. Rev. Stat. Ann. §§ 42–1306, 42–1310.16 (1991).   Blaze protested the assessment and prevailed at the end of administrative proceedings, but, on review, the Arizona Tax Court granted summary judgment in the Department's favor.   The Arizona Court of Appeals reversed.   190 Ariz. 262, 947 P. 2d 836 (1997).   It rejected the Department's argument that our decision in *New Mexico, supra,* controlled the case and held that federal law pre-empted the application of Arizona's transaction privilege tax to Blaze.   The Arizona Supreme Court denied the Department's petition for review, with one justice voting to grant the petition.   We granted certiorari, 523 U. S. 1117 (1998), and now reverse.

## II

In *New Mexico,* we considered whether a State could impose gross receipts and use taxes on the property, income, and purchases of private federal contractors.   To remedy "the confusing nature of our precedents" in this area, 455 U. S., at 733, we announced a clear rule:

> "[T]ax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned."   *Id.,* at 735.

We reasoned that this "narrow approach" to the scope of governmental tax immunity "accord[ed] with competing constitutional imperatives, by giving full range to each sovereign's taxing authority."   *Id.,* at 735–736 (citing *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466, 483 (1939)).   For that immunity to be expanded beyond these "narrow constitu-

---

[1] The Department initially also sought to tax Blaze's proceeds from contracts with tribal housing authorities but eventually dropped its claim. We therefore have no occasion to consider Blaze's tax liability with respect to those contracts.

tional limits," we explained that Congress must "take responsibility for the decision, by so *expressly* providing as respects contracts in a particular form, or contracts under particular programs." 455 U. S., at 737 (emphasis added); see also *Carson* v. *Roane-Anderson Co.*, 342 U. S. 232, 234 (1952). Applying those principles, we upheld each of the taxes at issue in that case because the legal incidence of the taxes fell on the contractors, not the Federal Government; the contractors could not be considered agencies or instrumentalities of the Federal Government; and Congress had not expressly exempted the contractors' activities from taxation but, rather, had expressly repealed a pre-existing statutory exemption. See *New Mexico*, 455 U. S., at 743–744.

These principles control the resolution of this case. Absent a constitutional immunity or congressional exemption, federal law does not shield Blaze from Arizona's transaction privilege tax. See *id.*, at 737; *James* v. *Dravo Contracting Co.*, 302 U. S. 134, 161 (1937). The incidence of Arizona's transaction privilege tax falls on Blaze, not the Federal Government. Blaze does not argue that it is an agency or instrumentality of the Federal Government, and *New Mexico's* clear rule would have foreclosed any such argument under these circumstances. Nor has Congress exempted these contracts from taxation. Cf. *Carson, supra*, at 234.

Nevertheless, the Arizona Court of Appeals held (and Blaze urges here) that the tax cannot be applied to activities taking place on Indian reservations.[2] After it employed a

---

[2] Blaze also appears to argue that Arizona's tax infringes on the Tribes' right to make their own decisions and be governed by them and that this is sufficient, by itself, to preclude application of Arizona's tax. See *Williams* v. *Lee*, 358 U. S. 217, 220 (1959). Our decisions upholding state taxes in a variety of on-reservation settings squarely foreclose that argument. See, *e. g., Washington* v. *Confederated Tribes of Colville Reservation*, 447 U. S. 134, 156 (1980); *Moe* v. *Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U. S. 463, 483 (1976).

balancing test "weighing the respective state, federal, and tribal interests," *Cotton Petroleum Corp.* v. *New Mexico*, 490 U. S. 163, 177 (1989), the court below held that a congressional intent to pre-empt Arizona's tax could be inferred from federal laws regulating the welfare of Indians. In cases involving taxation of on-reservation activity, we have undertaken this "particularized examination," *Ramah Navajo School Bd., Inc.* v. *Bureau of Revenue of N. M.*, 458 U. S. 832, 838 (1982), where the legal incidence of the tax fell on a nontribal entity engaged in a transaction with tribes or tribal members. See, *e. g., Cotton Petroleum Corp., supra,* at 176–187 (state severance tax imposed on non-Indian lessee's production of oil and gas); *Ramah, supra,* at 836–846 (state gross receipts tax imposed on private contractor's proceeds from contract with tribe for school construction); *Central Machinery Co.* v. *Arizona Tax Comm'n*, 448 U. S. 160, 165–166 (1980) (tax imposed on sale of farm machinery to tribe); *White Mountain Apache Tribe* v. *Bracker*, 448 U. S. 136, 144–153 (1980) (motor carrier license and use fuel taxes imposed on logging and hauling operations pursuant to contract with tribal enterprise). But we have never employed this balancing test in a case such as this one where a State seeks to tax a transaction between the Federal Government and its non-Indian private contractor.

We decline to do so now. Interest balancing in this setting would only cloud the clear rule established by our decision in *New Mexico.* The need to avoid litigation and to ensure efficient tax administration counsels in favor of a bright-line standard for taxation of federal contracts, regardless of whether the contracted-for activity takes place on Indian reservations. Cf. *Oklahoma Tax Comm'n* v. *Chickasaw Nation*, 515 U. S. 450, 458–459 (1995); *County of Yakima* v. *Confederated Tribes and Bands of Yakima Nation*, 502

U. S. 251, 267–268 (1992).[3] Moreover, as we recognized in *New Mexico*, the "political process is 'uniquely adapted to accommodating'" the interests implicated by state taxation of federal contractors. 455 U. S., at 738 (quoting *Massachusetts* v. *United States*, 435 U. S. 444, 456 (1978) (plurality opinion)). Accord, *Washington* v. *United States*, 460 U. S. 536, 546 (1983). Whether to exempt Blaze from Arizona's transaction privilege tax is not our decision to make; that decision rests, instead, with the State of Arizona and with Congress.

Our conclusion in no way limits the Tribes' ample opportunity to advance their interests when they choose to do so. Under the Indian Self-Determination and Education Assistance Act, 88 Stat. 2203, 25 U. S. C. § 450 *et seq.* (1994 ed. and Supp. III), a tribe may request the Secretary of Interior to enter into a self-determination contract "to plan, conduct, and administer programs or portions thereof, including construction programs." § 450f(a)(1). Where a tribe enters into such a contract, it assumes greater responsibility over the management of the federal funds and the operation of certain federal programs. See, *e. g.*, 25 CFR § 900.3(b)(4) (1998). Here, the Tribes on whose reservations Blaze's work was performed have not exercised this option, and the Federal Government has retained contracting responsibility. Because the Tribes in this case have not assumed this responsibility, we have no occasion to consider whether the Indian pre-emption doctrine would apply when Tribes choose to take a more direct and active role in administering the

---

[3] Indeed, a recent decision by the New Mexico Supreme Court illustrates the perils of a more fact-intensive inquiry. See *Blaze Constr. Co., Inc.* v. *Taxation and Revenue Dept. of New Mexico*, 118 N. M. 647, 884 P. 2d 803 (1994), cert. denied, 514 U. S. 1016 (1995). In that case, also involving the imposition of a tax on the gross receipts of Blaze's federal contracts, the New Mexico Supreme Court applied the balancing test in *Cotton Petroleum Corp.* v. *New Mexico*, 490 U. S. 163 (1989), and reached the exact opposite conclusion from the Arizona Court of Appeals. 118 N. M., at 652–653, 884 P. 2d, at 808–809.

federal funds.    Therefore, we see no need to depart from the clear rule announced in *New Mexico.*

*   *   *

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*