907 So.2d 586 (2005)
FLORIDA DEPARTMENT OF REVENUE, Appellant,
v.
NAVAL AVIATION MUSEUM FOUNDATION, INC., Appellee.
No. 1D03-3570.
District Court of Appeal of Florida, First District.
July 18, 2005.
Charlie Crist, Attorney General; John Mika, Assistant Attorney General; and Eric J. Taylor, Senior Assistant Attorney General, Tallahassee, for Appellant.
James L. Chase and Keith A. McIver of Chase, Quinnell, McIver & Jackson, P.A., Pensacola, for Appellee.
VAN NORTWICK, J.
The Florida Department of Revenue appeals a final summary judgment ruling that the Naval Aviation Museum Foundation, Inc. (Foundation), appellee, which operates a gift shop at the National Museum of Naval Aviation (Museum) at the U.S. Naval Air Station at Pensacola, Florida, is exempt from the obligation to collect Florida sales tax. Because we conclude that the Foundation is not an instrumentality of the government of the United States, we reverse the final judgment.

Background
The essential facts are not in dispute. The Foundation is a Florida nonprofit corporation which provides services at the Museum, including the operation of a museum, gift shop and theater there. The Museum was established in 1962 to preserve the history and traditions of Naval Aviation and to allow the men and women who have served in the Navy to offer their experience to the community. The Museum also serves as a recruiting tool for the Navy. The Museum is owned by the federal government. The Foundation sells tangible personal property at retail in its gift shop in the Museum. The Foundation was not established by, and is not owned *587 by, any branch or agency of the federal government.
In addition to providing services at the Museum, the Foundation has raised substantial amounts for expansion of the Museum and in general support of the Museum's mission. None of the proceeds raised by the Foundation have been used for private gain. The Foundation also sponsors "Foundation," a biannual journal of Naval Aviation history, and hosts annual symposiums designed to promote awareness of Naval Aviation history.
The Department is an agency of the State of Florida, authorized by statute to administer to state tax laws. See § 212.18, Fla. Stat. (2001). Pursuant to Chapter 212, Florida Statutes, the Department is seeking to collect sales taxes on tangible personal property sold by the Foundation. The Department is not attempting to collect taxes on past sales by the Foundation, but only wishes to collect sales tax on prospective sales by the Foundation.
The State of Florida levies a tax on "each taxable transaction or incident" which includes "tangible personal property when sold at retail in this state." § 212.05(1)(a)1.a. The legal incidence of the Florida sales tax falls upon the purchaser or consumer. § 212.07(1). However, while the legal incidence of the tax falls upon the purchaser, the obligation to collect and ultimately pay the state sales tax falls upon the party, defined as a "dealer,"[1] making the retail sale. § 212.07(1). Accordingly, the dealer must add the amount of the tax to the sale price and separately state the amount, which then becomes part of the price of the sale.
For the purpose of enforcing the collection of the sales tax levied by chapter 212, the Department is authorized and empowered to examine the books and records of all entities conducting business in the state. § 212.13. As such, each dealer is required to keep "a complete record of tangible personal property" sold at retail. § 212.13(2). Each dealer is also required to permit the Department to examine his or her books and records. § 212.13(3), (4). Chapter 212, Florida Statutes, imposes various civil and criminal penalties upon dealers for noncompliance with its requirements. For instance, section 212.07(2) announces that "any dealer who neglects, fails, or refuses to collect the tax herein provided ... shall be liable for and pay the tax himself or herself." Any dealer who does not comply with the aforementioned books and records requirements under section 212.13 is also guilty of a misdemeanor punishable by law. §§ 212.13(2), (3).
In 2001, the Department attempted to examine the books and records of the Foundation to determine the tax liability owed to the state from sales generated by the Foundation in its gift shop at the Museum. In response, in May 2002, the Foundation filed a complaint seeking a declaratory judgment that the Foundation, as a federal instrumentality, is exempt from the examination of its books and records, and collection of sales tax by the Department. The Department argued below that the Foundation should not be considered a federal instrumentality, asserting that the Foundation operates as nothing more than a nonprofit corporation and, as such, is responsible for the collection of sales tax on its sales of tangible *588 personal property within Florida. In the alternative, the Department argued that even if the Foundation were to be considered a federal instrumentality, it would not be relieved from its duty to collect state sales taxes. The trial court entered an order granting summary judgment in favor of the Foundation and finding that the Foundation is a federal instrumentality and, as such, is exempt from the imposition of or collection of Florida sales tax. This appeal ensued.

Federal Instrumentality
The federal government's immunity from state taxation was established by the United States Supreme Court in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), with Chief Justice Marshall's well-known declaration that "the power to tax involves the power to destroy." 17 U.S. at 431. In McCulloch, the Court declared unconstitutional a tax imposed by the State of Maryland on the National Bank, holding that, as "necessarily implied" by the Supremacy Clause,[2]id. at 427, a state is prohibited from imposing a tax on the federal government or the National Bank, an institution owned by the federal government. Id. at 435-6. Ten years after McCulloch, the Court struck down a state tax on interest income from federal bonds, explaining that such taxes cannot constitutionally be imposed on an "operation essential to the important objects for which the government was created." Weston v. City Council of Charleston, 27 U.S. (2 Pet.) 449, 467, 7 L.Ed. 481 (1829). During the 100 years following Weston, the Court invalidated, among others, state taxes on the income of federal employees, Dobbins v. Comm'rs of Erie County, 41 U.S. (16 Pet.) 435, 10 L.Ed. 1022 (1842); on income derived from property leased from the federal government, Gillespie v. Oklahoma, 257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338 (1922); and on sales by a government contractor to the United States, Panhandle Oil Co. v. Mississippi ex rel. Knox, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857 (1928). In James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937), however, the Court "marked a major change in course," United States v. New Mexico, 455 U.S. 720, 731, 102 S.Ct. 1373, 1381, 71 L.Ed.2d 580 (1982), and upheld a West Virginia privilege tax imposed on the gross receipts of a contractor doing business with the United States. James, 302 U.S. at 150, 58 S.Ct. at 216. The James court found that the constitutional exemption from state taxation did not apply "where no direct burden is laid upon the governmental instrumentality." Id.
The determinative issue here is whether the Foundation is a federal instrumentality. While no bright-line test has been established for determining whether an organization is an instrumentality of the federal government for the purpose of claiming tax immunity, certain guiding principles have been developed in the case law.[3]
*589 The Foundation argues below and on appeal that under the standards set forth in Standard Oil v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942), Dep't of Employment v. United States, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), and United States v. District of Columbia, 558 F.Supp. 213 (D.D.C.1982), the trial court correctly found that the Foundation is a federal instrumentality and, thus, exempt from the Department's audit for, and the assessment and collection of, Florida sales or use tax. For the reasons discussed below, we find these cases distinguishable and, therefore, not controlling.
In Standard Oil v. Johnson, the Supreme Court held that a post exchange on an Army base was an instrumentality of the federal government and, accordingly, sales of motor vehicle fuel to the exchanges were exempt from California license taxes. In its analysis, the Court identified four significant factors in reaching its conclusion that post exchanges operated as "arms of the government": (1) post exchanges operate under regulations promulgated by the Secretary of War; (2) Congress had treated post exchanges as governmental units by appropriating funds for the construction and maintenance of such exchanges; (3) government employees handled and were responsible for all funds of the exchange; and (4) profits of the exchanges were used to support the general welfare of troops and were not enjoyed by private individuals. 316 U.S. at 484-5, 62 S.Ct. at 1170.
Then, in Dep't of Employment, the Supreme Court held that the Red Cross is an instrumentality of the federal government. There, the Court found it significant (1) that the Red Cross was chartered by Congress, (2) that it was subject to supervision and audit by the federal government, (3) that its principal officers and several of its governors were appointed by the President, (4) that it performed important federal functions, and (5) that it received material assistance from the federal government. 385 U.S. at 358-9, 87 S.Ct. at 467.[4]
While the undisputed facts here show that the Foundation unquestionably provides important benefits to the Museum, and ultimately to the Navy itself, based on the record before us, we cannot conclude that the Foundation "stands in the shoes" of the federal government. Although the record reflects that the Museum is federally sponsored, according to the Declaration and Memorandum of Agreement between the Chief of Naval Air Training and the Naval Aviation Museum Foundation, Inc., the "Foundation is a charitable corporation under the laws of Florida created solely for the purpose of fostering and perpetuating the Museum." According to the record, the Foundation was established as a private, non-profit organization for the specific purpose of being "unfettered" by government control. Further, the Foundation *590 is not operated by federal employees and, although federal law and Navy regulations govern the Navy's acceptance of the Foundation's gifts to the Navy and impact the finances and budget of the Foundation, the federal government does not regulate, supervise or appoint members of the governing board of the Foundation. By this arrangement, the Navy and the Foundation are independent legal entities. See Miles v. Naval Aviation Museum Found., Inc., 289 F.3d 715 (11th Cir.2002).
We find that the issue before us is governed by the Court's opinion in United States v. New Mexico, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580. There, the Court considered the question of whether businesses which had contracted with the federal government and which were working on federal property were instrumentalities of the federal government and thereby immune from the gross receipts and use taxes of the State of New Mexico. Narrowly defining an instrumentality, the Court held that "tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot be realistically viewed as separate entities." 455 U.S. at 735, 102 S.Ct. at 1383 (emphasis added); see also Director of Revenue of Missouri v. CoBank ACB, 531 U.S. 316, 321, 121 S.Ct. 941, 944, 148 L.Ed.2d 830 (2001); Arizona Dept. of Revenue v. Blaze Const. Co. Inc., 526 U.S. 32, 119 S.Ct. 957, 143 L.Ed.2d 27 (1999). Thus, the New Mexico Court explained that "to resist the State's taxing power, a private taxpayer must actually `stand in the Government's shoes.'" 455 U.S. at 736, 102 S.Ct. at 1383, quoting City of Detroit v. Murray Corp., 355 U.S. 489, 503, 78 S.Ct. 486, 491, 2 L.Ed.2d 460 (1958)(opinion of J. Frankfurter, J.). Thus, and significantly for our purposes, the Court held that the contractors at issue in New Mexico were obliged to pay state sales taxes on purchases made pursuant to the government contracts, even though the incidence of the tax would be passed directly to the government pursuant to those contracts. 455 U.S. at 734, 102 S.Ct. at 1382. If the Supremacy Clause does not preclude the payment of sales taxes by entities which pass on the burden of the taxes to the federal government, then certainly the burden of collecting sales taxes paid by others does not offend the Supremacy Clause. Unlike an Army post exchange, Standard Oil v. Johnson, or the Red Cross, Dep't of Employment, nothing in the record establishes that the Foundation is one of the "arms of Government deemed by it essential for the performance of governmental functions." New Mexico, 455 U.S. at 737, 102 S.Ct. at 1384, quoting Standard Oil Co. v. Johnson, 316 U.S. at 485, 62 S.Ct. at 1170. While the Foundation unquestionably raises significant financial support for the Museum, it does not fulfill an essential function of government.
In view of our holding that the Foundation is not a federal instrumentality immune from collecting state sales tax, we do not address the Department's alternative argument that, even if the Foundation were a federal instrumentality, it would not be immune from the obligation to collect state sales taxes.
REVERSED and REMANDED for proceedings consistent with this opinion.
ALLEN and BROWNING, JJ., concur.
NOTES
[1] The term "dealer" includes "every person... who sells at retail ... tangible personal property...." § 212.06(2)(c), Fla. Stat. (2001). "Person" is defined for purposes of chapter 212 to include "any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, ... or other group or combination acting as a unit and also includes any agency, bureau, or department...." § 212.02(12).
[2] The Supremacy Clause provides that "[t]his Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2, U.S. Const.
[3] Courts have observed that the jurisprudence concerning the tax immunity of federal instrumentalities is a "bog," United States v. Nye County, 178 F.3d 1080, 1083 (9th Cir.1999), "often confused," United States v. City of Detroit, 355 U.S. 466, 473, 78 S.Ct. 474, 478, 2 L.Ed.2d 424 (1958), and "marked from the beginning by inconsistent decisions and excessively delicate distinctions." United States v. New Mexico, 455 U.S. at 730, 102 S.Ct. at 1381.
[4] The Foundation also relies heavily on the opinion of the federal district court in United States v. District of Columbia, which found that the United States Capitol Historical Society was a federal instrumentality. In so ruling, the district court applied the Dep't of Employment factors and identified what it views as the three most important factors for determining whether an organization is a federal instrumentality: (1) whether the organization has a close relationship to the federal government, (2) whether the organization performs an essential function for the federal government, and (3) whether any private benefit is derived from the organization's operations. 558 F.Supp. at 216-17. We do not find United States v. District of Columbia persuasive. First, the decision was later vacated as moot by virtue of the adoption of a federal statute. 709 F.2d 1521 (D.C.Cir.1983). Second, the United States Supreme Court's decision in United States v. New Mexico does not follow the Dep't of Employment analysis.