IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

UTE MOUNTAIN UTE TRIBE, *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellee*.

No. 1 CA-TX 22-0004
FILED 1-10-2023

---

Appeal from the Arizona Tax Court
No.  TX2021-000365
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

---

COUNSEL

Yoder & Langford PC, Scottsdale
By Robert R. Yoder
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Kimberly J. Cygan and Benjamin H. Updike
*Counsel for Defendant/Appellee*

---

## OPINION

Judge Jennifer B. Campbell delivered the opinion of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1　　　The Ute Mountain Ute Tribe (Ute Mountain) and the Weeminuche Construction Authority (WCA) (collectively, the Appellants) challenge the tax court's judgment upholding the Arizona Department of Revenue's (the Department) determination that WCA owes transaction privilege taxes on its earnings from three construction projects. Because the gross proceeds from construction work performed under a contract with the federal government on a Native American reservation by a non-affiliated Native American contractor are subject to Arizona's transaction privilege tax, we affirm the tax court's judgment.

### BACKGROUND

¶2　　　Ute Mountain is a Native American tribe. Ute Mountain owns the WCA. In 2014 and 2015, the Bureau of Indian Affairs (the Bureau) contracted with WCA to perform three construction projects, two on the Navajo Nation and one on the Hopi reservation. Each project involved the management of reservation land resources and tribal water rights.

¶3　　　In 2018, the Department audited WCA from January 1, 2012 through October 31, 2017. Upon completing the audit, the Department issued a deficiency assessment for transaction privilege taxes on WCA's gross proceeds from the three construction projects (the project earnings), characterizing the projects as "for the B[ureau]" rather than "for" the Navajo and Hopi tribes. The Appellants protested the assessment, asserting the Bureau contracted with WCA in its trust capacity *to benefit* the Navajo and Hopi tribes, thereby exempting the project earnings from the transaction privilege tax.

¶4　　　Unable to resolve their dispute with the Department through informal and bypass conferences, the Appellants appealed to the tax court. On the Department's motion, the tax court dismissed the Appellants' complaint with prejudice for failure to state a claim and denied the

Appellants' request to amend the complaint as untimely and futile. The Appellants timely appealed.

## DISCUSSION

**¶5**   Challenging the tax court's dismissal of their complaint, the Appellants first argue that federal law preempts imposing Arizona's transaction privilege tax in this case. Absent federal preemption, the Appellants alternatively contend that the project proceeds are exempt from Arizona's transaction privilege tax under both TPR 95-11, the Department's transaction privilege tax ruling in effect during the relevant period, and A.R.S. § 42-5122. Finally, the Appellants assert that the tax court improperly dismissed their claims without permitting them to file an amended complaint. We address each argument in turn.

**¶6**   Arizona law imposes an excise tax on persons and entities engaging in business within the State under certain business classifications. A.R.S. § 42-5008. Prime contracting is one of the enumerated business classifications subject to the transaction privilege tax. A.R.S. § 42-5010(A)(1)(h). Because the tax is "assessed on the privilege or right to engage in an occupation or business," the business providing the service pays it and may not shift it to the customer.[1] *Vangilder v. Ariz. Dep't of Revenue*, 252 Ariz. 481, 485, ¶ 7 (2022).

**¶7**   We review the dismissal of a complaint de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). We accept as true all well-pled factual allegations and reasonable inferences from them, *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008), and will affirm only if, as a matter of law, the Appellants "would not be entitled to relief under any interpretation of the facts," *Coleman*, 230 Ariz. at 356, ¶ 8 (quotation and citation omitted).

### I.  Federal Preemption

**¶8**   The Appellants contend that the tax court applied the wrong legal standard to assess whether federal law preempts imposing Arizona's

---

[1]  In their complaint, the Appellants alleged that "[t]he Department is foreclosed from enforcing its assessment" because "the Hopi Tribe and the Navajo Nation are indispensable parties that cannot be joined as a result of their sovereign immunity." To the extent the Appellants reassert this contention on appeal, it lacks merit. An assessment for transaction privilege taxes is levied directly against the business and liability for such taxes may not be enforced against or passed onto the customer.

transaction privilege tax on the project proceeds. Relying on *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), the Appellants argue that the court should have engaged in a fact-specific inquiry and weighed the interests of the parties to determine whether federal law preempts Arizona's taxing authority rather than finding the "bright-line" test for federal preemption enunciated in *Arizona Department of Revenue v. Blaze Construction Co., Inc.*, 526 U.S. 32 (1999), dispositive.

¶9        In *Bracker*, the United States Supreme Court considered the extent of state authority to regulate and tax economic activities on Native American reservations. 448 U.S. at 137. Recognizing Native American tribes' "sovereignty over both their members and their territory," the Supreme Court explained that "state law is generally inapplicable" to tribal conduct on reservations, but states may have a regulatory interest in the conduct of nontribal persons on reservations. *Id.* at 142–44 (quotation and citation omitted). To assess the extent of a state's interest, the Supreme Court formulated a balancing test requiring "a particularized inquiry into the nature of the state, federal, and tribal interests at stake." *Id.* at 145.

¶10        Applying this balancing test to the facts of the case, the Supreme Court held that the federal government's "comprehensive" regulatory scheme for harvesting timber on Native American reservations was "so pervasive" that it precluded Arizona's assessment of certain state taxes on the logging and hauling proceeds from a nontribal company's contract with a Native American tribe to "fell[] tribal timber" and "transport[] it to the tribal organization's sawmill." *Id.* at 136, 145–51.

¶11        Nearly 20 years later, in *Blaze*, the United States Supreme Court revisited the scope of state taxing authority over business conducted on tribal land and held that a state may impose taxes on the proceeds derived from a nontribal contractor's federal contract for construction work on a Native American reservation. 526 U.S. at 34. Distinguishing *Bracker*, the Supreme Court held that applying a balancing test is proper only when the proceeds at issue derive from a nontribal entity's direct transaction with the tribe or tribal members. *Id.* at 37. Stated differently, the Supreme Court clarified that *Bracker's* balancing test is inapplicable when a state seeks to tax a transaction between the federal government and a nontribal contractor. *Id.* For economic transactions between the federal government and a nontribal contractor, the Supreme Court articulated a "bright-line standard" in favor of "tax[ing] federal contracts, regardless of whether the contracted-for activity takes place on [Native American] reservations." *Id.*

¶12      With that standard in mind, the Supreme Court considered the economic transaction at issue, involving a construction company owned by a Native American tribe member in Montana that contracted with the Bureau to build, repair, and improve roads on several Native American reservations in Arizona. *Id.* at 34. Although Blaze was owned by a Native American and incorporated under the laws of the owner's tribe, the Supreme Court deemed it "the equivalent of a non-[tribal entity] for purposes of th[e] case because none of its work occurred" on the owner's tribal lands.[2] *Id.* (citing *Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134, 160–61 (1980) ("[N]onmembers are not constituents of the governing Tribe. For most practical purposes [non-affiliated Native Americans] stand on the same footing as non-[Native Americans].")). At the end of the contracting period, the Department "issued a tax deficiency against Blaze for its failure to pay Arizona's transaction privilege tax on the proceeds from its contracts with the Bureau." *Id.* The Supreme Court upheld the deficiency tax assessment, expressly distinguishing earlier cases, including *Bracker*, that applied a balancing test. *Id.* at 37–39. In so doing, the Supreme Court explained that it "never employed [a] balancing test in a case" in which a state sought "to tax a transaction between the Federal Government and its non-[tribal] private contractor." *Id.* at 37. Concluding "[i]nterest balancing in this setting would only cloud the clear rule," and "to avoid litigation and to ensure efficient tax administration," the Supreme Court adopted the "bright-line standard for taxation of federal contracts." *Id.*

¶13      To support their contention that *Bracker*'s fact-specific inquiry and balancing test governs federal preemption here, the Appellants distinguish *Blaze* as simply a "governmental tax immunity case." While the Supreme Court addressed the governmental tax immunity doctrine in *Blaze* and reaffirmed its previous holding that tax immunity applies only to the

---

[2]      To the extent the Appellants contend that WCA enjoys sovereign immunity for its conduct on the Navajo Nation and Hopi reservation because it is wholly owned by a federally recognized Native American tribe, their claim lacks merit. *Duro v. Reina*, 495 U.S. 676, 686 (1990) ("Exemption from state taxation for residents of a reservation . . . is determined by tribal membership, not by reference to [Native Americans] as a general class."), *superseded on other grounds by statute as recognized in United States v. Lara*, 541 U.S. 193, 196, 199–200 (2004); *see also Ariz. Dep't of Revenue v. Dillon*, 170 Ariz. 560, 565–66 (App. 1991) (concluding taxpayer's status as a Native American did not immunize him from Arizona's taxing authority over economic transactions he conducted on another tribe's lands).

federal government or an "agency or instrumentality" closely connected to the federal government, the Appellants' characterization fails to recognize the full scope of *Blaze*'s holding. *Id.* at 35–36. Upon determining that Blaze did not qualify for, *or even assert*, governmental tax immunity, the Supreme Court considered Blaze's contention that Arizona's transaction privilege tax "cannot be applied to activities taking place on [Native American] reservations." *Id.* at 36–37. The Supreme Court acknowledged that its prior "cases involving taxation of on-reservation activity" had applied a balancing test but clarified that it had "never employed this balancing test" when a state sought "to tax a transaction" between the federal government and a nontribal private contractor. *Id.* at 37. Read in its entirety, the scope of *Blaze*'s holding is not, as the Appellants contend, limited to the governmental tax immunity doctrine.

¶14        The Appellants also argue that *Blaze* is inapplicable here because the Bureau, in contracting with WCA, was not "acting in the interest of the federal government" but "*as and for*" the Navajo and Hopi tribes. As such, the Appellants assert that there is no meaningful distinction between these facts and those of a "direct contractor-to-tribe arrangement," unquestionably governed by *Bracker*'s balancing test. Moreover, the Appellants contend that *Blaze* is distinguishable because unlike the construction projects at issue in that case, which involved building and repairing "federal roads open to the general public," here, the construction projects conserve and manage tribal resources. Furthermore, while nothing in *Blaze*'s factual recitation reflects that the tribes upon whose lands the roads were constructed took an active role in the projects, according to the Appellants, the Hopi and Navajo tribes were actively involved here.

¶15        Contrary to the Appellants' contentions, *Blaze* expressly and unambiguously sets out a bright-line standard upholding state taxing authority over the proceeds derived from *all* federal contracts. *Id.* at 38. As the Appellants correctly note, the Supreme Court, in *Blaze*, did not fully analyze the extent of the tribes' involvement with the federal public road projects on their lands. But, a bright-line test, by its nature, is not a nuanced, fact-specific inquiry. While pronouncing the bright-line rule, the Supreme Court acknowledged that tribes *may choose* "to advance their interests" under the Indian Self-Determination and Education Assistance Act by "enter[ing] into a self-determination contract 'to plan, conduct, and administer programs or portions thereof, including construction programs.'" *Id.* (quoting 25 U.S.C. § 450f(a)(1)). Because the tribes "on whose reservations Blaze's work was performed" did not "exercise[] this option, and the Federal Government [] retained contracting responsibility," the Supreme Court determined it was unnecessary to consider whether the

preemption doctrine "would apply when [t]ribes choose to take a more direct and active role in *administering [] federal funds.*" *Id.* at 38–39 (emphasis added).

**¶16** Like *Blaze*, here, the Navajo and Hopi tribes did not enter into self-determination contracts to plan, conduct, and administer their own construction programs. Because the federal government retained contracting responsibility, the bright-line standard favoring taxation of federal contracts applies. Indeed, as this court has recognized, *Blaze* conclusively "resolved" that a state may tax the "proceeds from a contract with the federal government for work performed on [a Native American] reservation for the benefit of [Native Americans]." *Luther Constr. Co., Inc. v. Ariz. Dep't of Revenue*, 205 Ariz. 602, 607, ¶ 28 (App. 2003). For that reason, the tax court correctly determined that federal law does not preempt Arizona's transaction privilege tax in this case, and the Appellants' allegation predicated on federal preemption failed to state a claim for relief as a matter of law.

## II. State Exemption

**¶17** As the Appellants correctly note, *Blaze* does not *mandate* state taxation of federal contract proceeds but simply holds that federal law does not preempt state taxing authority over contracts negotiated between the federal government and nontribal contractors. 526 U.S. at 38. Absent federal preemption, the Appellants alternatively argue that the project proceeds are exempt from Arizona's transaction privilege tax under both TPR 95-11 and A.R.S. § 42-5122.[3]

**¶18** "Exemptions from the transaction privilege tax must be strictly construed, with the presumption being against such exemption." *Carter Oil Co., Inc. v. Ariz. Dep't of Revenue*, 248 Ariz. 339, 341, ¶ 5 (App. 2020) (internal quotation and citation omitted). In 1995, the Department issued TPR 95-11, which interprets Arizona's transaction privilege tax statutes and specifically addresses "[t]he imposition of transaction privilege tax on activities performed on [Native American] reservations located within the State of Arizona." We need not construe the Department's ruling, however, to evaluate whether the Appellants adequately stated a claim for relief

---

[3] To the extent the Appellants reframe their reliance on TPR 95-11 as supporting a claim for administrative relief rather than an exemption, we note that the allegations of their complaint characterized the claim as one of exemption. Accordingly, we address the claim as raised in the tax court, not as recast on appeal.

based on a TPR 95-11 exemption because the Department lacks the authority to create such an exemption. *See State ex rel. Woods v. Block*, 189 Ariz. 269, 275 (1997) ("The legislature has the exclusive power to declare what the law shall be." (quotation and citation omitted)); *Val-Pak East Valley, Inc. v. Ariz. Dep't of Revenue*, 229 Ariz. 164, 171, ¶ 27 n.8 (App. 2012) (explaining that the Department's tax rulings are "advisory only" and "not controlling"). That is, the Department's ruling cannot, as a matter of law, create a legal exemption to Arizona's transaction privilege tax statutory scheme. Instead, TPR 95-11 provided only the Department's interpretation of the relevant statutes, but those legal conclusions are not binding, and courts, not agencies, "remain the final authority on critical questions of statutory construction." *SWAT Training Facilities L.L.C. v. Ariz. Dep't of Revenue*, 251 Ariz. 269, 273, ¶ 8 (App. 2021). Indeed, TPR 95-11 includes an "explanatory notice" specifically stating that the ruling only "provide[s] interpretive guidance" and expressly acknowledging that it may be "modif[ied] or negate[d]" by statute, case law, administrative rules, or later rulings. To be clear, neither TPR 95-11 nor any other Department ruling created a legal exemption to Arizona's transaction privilege tax statutory scheme.

¶19 Likewise, we need not construe A.R.S. § 42-5122 to evaluate whether the Appellants adequately stated a claim for relief predicated on a statutory exemption because the legislature did not enact A.R.S. § 42-5122 until 2021, well after the relevant contractual period. *See* 2021 Ariz. Sess. Laws, ch. 443, § 4. To apply retroactively, a statute must contain an express statement of retroactive intent, and A.R.S. § 42-5122 contains no such language. A.R.S. § 1-244; *see also Aranda v. Indus. Comm'n*, 198 Ariz. 467, 470, ¶ 10 (2000). Moreover, even accepting the Appellants' contention that A.R.S. § 42-5122 merely "codifie[d]" TPR 95-11, its enactment did not render the Department's ruling a statutory exemption or otherwise imbue TPR 95-11 with legal force.

¶20 Because neither TPR 95-11 nor A.R.S. § 42-5122 provided an exemption, the project proceeds are subject to Arizona's transaction privilege tax, and the Appellants' allegations based on an exemption failed to state a claim for relief.

### III. Estoppel

¶21 Having determined that federal law does not preempt Arizona's taxing authority over the project proceeds and that neither TPR 95-11 nor A.R.S. § 42-5122 exempts the project proceeds from Arizona's transaction privilege tax, the remaining question is whether the tax court

improperly denied the Appellants' request to amend their complaint. Our review is constrained by the Appellants' failure to submit proposed written amendments in the tax court. In their cursory written request, the Appellants broadly sought leave to amend without specificity, and at oral argument on the motion, they referenced only an amendment based on a claim of detrimental reliance on TPR 95-11.

¶22 As a rule, amendments should be liberally permitted absent a finding of undue delay, dilatory motive, undue prejudice, or futility in the amendment. Ariz. R. Civ. P. 15(a)(2) ("Leave to amend must be freely given when justice requires."); *Bishop v. State Dep't of Corr.*, 172 Ariz. 472, 474–75 (App. 1992); *Owen v. Superior Court*, 133 Ariz. 75, 79 (1982); *see also Wigglesworth v. Mauldin*, 195 Ariz. 432, 439, ¶ 26 (App. 1999) (explaining the court should grant a non-moving party the opportunity to amend a complaint "if such an amendment cures its defects"). "Although the superior court has the discretion to deny a motion to amend, we review de novo whether a request to amend is futile." *Worldwide Jet Charter, Inc. v. Toulatos*, 1 CA-CV 21-0717, 1 CA-CV 22-0173, 2022 WL 17684985, at *4, ¶ 22 (Ariz. App. Dec. 15, 2022). In considering futility, we presume as true all well-pled factual allegations outlined in the proposed amendments. *See Cullen*, 218 Ariz. at 419, ¶ 7.

¶23 A claim for "equitable estoppel may lie against a taxing authority under the following four circumstances: (1) the taxing authority engaged in affirmative conduct inconsistent with a position it later adopted that is adverse to the taxpayer, (2) the taxpayer actually and reasonably relied on the taxing authority's prior conduct, (3) the taxing authority's repudiation of its prior conduct caused the taxpayer to suffer a substantial detriment because the taxpayer changed its position in a way not compelled by law, and (4) applying estoppel against the taxing authority would neither unduly damage the public interest nor substantially and adversely affect the exercise of governmental powers." *Luther Constr. Co.*, 205 Ariz. at 604–05, ¶ 11.

¶24 TPR 95-11 provided in relevant part:

C. Construction contracts performed on [Native American] reservations.

The gross proceeds derived from contracting activities performed on a reservation by the [Native American] tribe, a tribal entity or an affiliated [Native American] are not subject to Arizona's transaction privilege tax.

The gross proceeds derived from construction projects performed on [Native American] reservations by non-affiliated [Native American] or non-[Native American] prime contractors are not subject to the imposition of Arizona transaction privilege tax under the following conditions:

> 1. The activity is performed for the tribe or a tribal entity for which the reservation was established; or

> 2. The activity is performed for an individual [Native American] who is a member of the tribe for which the reservation was established.

The gross proceeds derived from construction projects performed on [Native American] reservations by non-affiliated [Native American] and non-[Native American] prime contractors for all other persons, including the federal government, are subject to the imposition of Arizona transaction privilege tax.

¶25　　　　In their reply brief, the Appellants contend for the first time that they reasonably believed the project proceeds were not subject to Arizona's transaction privilege tax under Section I(C)—"The gross proceeds derived from contracting activities performed on a reservation by the [Native American] tribe, a tribal entity or an affiliated [Native American] are not subject to Arizona's transaction privilege tax."—because Ute Mountain is a tribe and WCA is a tribal entity. *See In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 25 n.5 (App. 2000) (holding issues raised for the first time in a reply brief are waived). Waiver aside, this reading contradicts the plain language of the Department's ruling, which states that activities performed on a reservation by "*the*" tribe, a *tribal* entity, or an *affiliated* Native American are exempt. Rather than encompassing *any* Native American tribe, tribal entity, or individual Native American, the ruling referred to "the" tribe, meaning the "tribe for whose benefit the reservation was established." TPR 95-11, Definitions. Because neither Ute Mountain nor WCA are the intended beneficiaries of the Navajo or Hopi reservations, they are not contemplated within this provision.

¶26　　　　Next, the Appellants assert that they reasonably believed the project proceeds were not subject to Arizona's transaction privilege tax under Section I(C)(1)—"The activity is performed for the tribe or a tribal entity for which the reservation was established."—because WCA

performed its contracted services *for the benefit of* the Navajo and Hopi tribes. In other words, the Appellants contend that "for," as the term is used in TPR 95-11, means the entity *for whom* the contracted work is intended to benefit rather than *for whom* the contractor contracted to work.

¶27        Viewed in isolation, the language of Section I(C)(1) arguably allows for the Appellants' interpretation. Read within the context of the entire section, however, the Department expressly differentiated between contractor transactions with the tribe, a tribal entity, or an affiliated member and contractor transactions with a nontribal person or entity, "including the federal government." To be clear, read as a whole, TPR 95-11 stated that project proceeds are not subject to Arizona's transaction privilege tax when the entity *for whom the contract is performed* is "the tribe or a tribal entity." Because TPR 95-11, in proper context, does not lend itself to the Appellants' proposed reading, there is no basis to conclude that the Department, in issuing the ruling, engaged in affirmative conduct inconsistent with its later deficiency tax assessment in this case or that the Appellants actually and reasonably relied on TPR 95-11 to conclude that the project proceeds are not subject to Arizona's transaction privilege tax. Moreover, by the time WCA entered the contracts at issue, caselaw had addressed the scope of TPR 95-11 and clarified that Arizona's transaction privilege tax "applie[s] to proceeds from federal contracts with non-[tribal members] to construct on-reservation structures for use by [tribal members]." *Luther Constr. Co.*, 205 Ariz. at 609, ¶ 34 (emphasis added); *see also* Ariz. Gen. Tax P. GTP 96-1 (explaining that taxpayers "may rely" on a Department ruling "unless it has been revoked or modified" by legislation, administrative rules, court decisions, or subsequent Department rulings).

¶28        Because the proposed amended complaint—adding a claim relying on estoppel—nonetheless would have faced dismissal for failure to state a claim, the tax court did not abuse its discretion by denying the Appellants' request to amend their complaint as futile. For these reasons, the tax court did not err by dismissing the Appellants' complaint with prejudice.

**CONCLUSION**

¶29   For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA