Filed 8/13/21; Certified for Publication 9/9/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| LEONARD ALBRECHT et al., | |
| Plaintiffs and Appellants, | E073926 |
| v. | (Super.Ct.No. PSC1501100) |
| COUNTY OF RIVERSIDE, | |
| Defendant and Respondent; | OPINION |
| DESERT WATER AGENCY et al., | |
| Interveners and Respondents. | |
| PATRICIA ABBEY et al., | |
| Plaintiffs and Appellants, | |
| v. | (Super.Ct.No. RIC1719093) |
| COUNTY OF RIVERSIDE, | |
| Defendant and Respondent; | |
| DESERT WATER AGENCY et al., | |
| Interveners and Respondents. | |

1

APPEAL from the Superior Court of Riverside County. Craig Riemer, Judge. Affirmed.

Faegre Drinker Biddle & Reath, Aaron Van Oort, Jerome A. Miranowski, Jane E. Maschka and Joshua T. Peterson and for Plaintiffs and Appellants.

Gregory P. Priamos, County Counsel, Ronak Patel, Deputy County Counsel; Perkins Coie, Jennifer A. MacLean and Benjamin S. Sharp for Defendant and Respondent.

Best Best & Krieger, Roderick E. Walston and Miles Krieger for Intervenor and Respondent Desert Water Agency.

Colantuono, Highsmith and Whatley, Michael G. Colantuono, Pamela K. Graham and Liliane M. Wyckoff for Intervenor and Respondent Coachella Valley Water District.

## I. INTRODUCTION

This appeal challenges the validity of a possessory interest tax imposed by the County of Riverside (the county) upon lessees of federally owned land set aside for the Agua Caliente Band of Cahuilla Indians (Agua Caliente tribe) or its members. A subset of the more than 450 plaintiffs in this appeal also challenge the validity of voter-approved taxes funding the Desert Water Agency, Coachella Valley Water District, Palm Springs Unified School District, Palo Verde School District, and Desert Community College District. A small minority of the plaintiffs claim to hold a possessory interest in land set aside for the Colorado River Indian tribe (CRIT), but they argue the challenged taxes are invalid for the same reasons asserted by the other plaintiffs.

2

Following a court trial based primarily upon stipulated facts, the trial court upheld the validity of the challenged taxes and plaintiffs' appeal, arguing the challenged taxes are preempted by federal law.  Specifically, plaintiffs contend:  (1) the challenged taxes are explicitly preempted under Title 25 United States Code section 5108 (section 5108), originally enacted as Title 25 United States Code section 465, the Indian Reorganization Act of 1934 (Pub.L. No. 73-383 (June 18, 1934) 48 Stat. 984; IRA); (2) the challenged taxes are impliedly preempted under the interest balancing test articulated by the United States Supreme Court in *White Mountain Apache Tribe v. Bracker* (1980) 448 U.S. 136 (*Bracker*); and (3) the challenged taxes are impliedly preempted under a separate infringement test purportedly developed in a separate line of judicial authority stemming from *Williams v. Lee* (1959) 358 U.S. 217 (*Williams*).

The question of whether the county may impose a possessory interest tax on lessees of land set aside for the Agua Caliente tribe or its members has been the subject of repeated litigation in both federal and state courts, and the validity of the county's possessory interest tax in this context has been repeatedly upheld.  (See *Palm Springs Spa*, *Inc. v. County of Riverside* (1971) 18 Cal.App.3d 372; *Agua Caliente Band of Mission Indians v. County of Riverside* (9th Cir. 1971) 442 F.2d 1184; *Agua Caliente Band of Cahuilla Indians v. Riverside Ct*y. (9th Cir. 2019) 749 Fed.Appx. 650.)  In fact, during the pendency of this appeal, this court issued its decision in *Herpel v. County of Riverside* (2020) 45 Cal.App.5th 96 (*Herpel*), again upholding the validity of the county's possessory interest tax under almost identical circumstances as those presented here.  Although plaintiffs claim that our decision in *Herpel* is not controlling because it

3

did not consider many of the arguments presented here, we conclude that the facts and arguments presented in this case do not materially differ from those already considered in *Herpel*, and plaintiffs have not presented any persuasive reason for us to depart from that recent decision.

## II. FACTS AND PROCEDURAL HISTORY

A. *Complaint and Procedural History*

On March 6, 2015, 189 plaintiffs filed a complaint against the county for a tax refund. Plaintiffs alleged that they each held a leasehold interest in land owned by the United States and held in trust for the benefit of "Indian Tribes and individual Indians" (Tribal Land) pursuant to section 5108;[1] that federal law prohibits local taxation of such land; and that, as a result, the possessory interest tax assessed and collected by the county constitutes an illegal tax. In a second amended complaint, an additional 162 plaintiffs were added. On October 10, 2017, a separate complaint was filed on behalf of 147 additional plaintiffs asserting identical claims, and the two actions were consolidated.

The parties stipulated, and the trial court ordered that trial in the consolidated action be bifurcated into two phases, with the first phase addressing the legality of the challenged taxes and the second phase determining the amount of any tax refunds, should

---

[1] "Section 5108 was originally enacted as section 465 of title 25 of the United States Code, part of the Indian Reorganization Act of 1934." (*Herpel*, *supra*, 45 Cal.App.5th at p. 118.) Plaintiffs briefs continue to refer to this statutory provision as "section 465," but they acknowledge that the provision has subsequently been reorganized as section 5108. Section 5108 was originally enacted and cited as Title 25 United States Code section 465.

plaintiffs prevail in the first phase. In October 2018, a court trial was held on the validity of the challenged taxes, with the evidence consisting primarily of stipulated facts.

B. *Stipulated Facts at Trial*

The Agua Caliente tribe and CRIT are federally recognized Indian tribes eligible for funding and services from the Bureau of Indian Affairs. The Agua Caliente tribe currently has over 400 members and its own elected governing body. Its reservation encompasses approximately 31,000 acres of land, spread in a checkerboard pattern across the Cities of Palm Springs, Cathedral City, and Rancho Mirage, as well as unincorporated areas of Riverside County. Some of its territory is held in trust by the federal government for the benefit of the tribe (tribal trust land), and some of the land is owned in trust for the benefit of one or more members of the tribe (allotted land). Currently, individual members lease out approximately 4,300 acres of allotted land under approximately 20,000 master leases, and a small portion of tribal trust land is also leased.

CRIT is primarily located in the Colorado River reservation in Arizona. In 1874, an executive order purported to expand the Colorado River reservation into parts of California. However, the legality of that expansion is disputed and, as a result, the western boundary of the reservation is unsettled. In recognition of this ongoing dispute, Congress has not authorized the Secretary of the Interior to review or approve CRIT leases of land in California. Nine of the plaintiffs in this litigation purportedly lease land from CRIT or its members.

Each plaintiff claims to lease one or more tracts of allotted land; claims that the property tax bill received from the county pertaining to his or her leased allotted land

5

includes a one percent possessory interest tax as well as various voter-approved taxes[2] based upon the assessed value of the possessory interest in the allotted land; and seeks a refund of the portion of taxes paid as a result of these possessory interest and voter-approved taxes.

The possessory interest tax is a general revenue tax that provides funding to the county and government agencies within the county. Revenues generated from the possessory interest tax are comingled with revenues collected from other property taxes, and the county cannot trace expenditures specifically to the revenues collected from the possessory interest tax. Overall, the revenues collected from the possessory interest tax assist in funding county services including education, fire, police, health and sanitation, sheriffs, district attorneys and public defenders, public infrastructure maintenance, as well as recreational and cultural services. All such services are available to all residents or visitors to the county without distinction between the identity of the taxpayer or the

---

[2] For purposes of this litigation, the voter-approved taxes at issue appear to include taxes funding the Palm Springs Unified School District, Palo Verde Unified School District, Desert Community College, Coachella Valley Water District, and the Desert Water Agency. We note that with respect to the Palo Verde Unified School District, plaintiffs have included this tax as part of their claims, but the county did not stipulate that any plaintiff actually pays this tax.

classification of land subject to the tax.[3]

With respect to the challenged voter-approved taxes, these taxes fund the Palm Springs Unified School District, Palo Verde Unified School District, Desert Community College District, Coachella Valley Water District, and the Desert Water Agency. Both the Desert Water Agency and Coachella Valley Water District provide water-related services to land within their defined boundaries, regardless of whether the land is allotted land. The Palm Springs Unified School District, Palo Verde School District, and Desert Community College District provide public education services to all residents within their district boundaries, including those that reside on allotted land. The Agua Caliente tribe does not provide any equivalent services to non-Indian lessees of allotted land.

A non-Indian lessee's failure to pay the possessory interest tax results in a lien against the lessee only, but it does not otherwise result in a lien or encumbrance upon the owner of the allotted land. Nevertheless, the Agua Caliente tribe considers the possessory interest tax to represent an economic burden. The Agua Caliente tribe has not taken any steps to quantify the alleged economic burden created by the county's possessory interest tax and is not aware of any specific instance in which a potential lessee of allotted land was dissuaded from leasing the land out of concern over taxation. The Agua Caliente tribe receives no portion of the revenues collected from the county's

---

[3] For example, fire services are provided to all unincorporated areas of the county including the portion of the Agua Caliente reservation located in unincorporated areas. Persons who own, lease, or reside on land within the tribe's reservation still have equal access to public schools, the regional medical center, regional parks, and the public cemetery. Flood control and vector control services are provided without regard to whether a specific parcel of land is considered within the tribe's reservation.

possessory interest tax or the lease payments made pursuant to the leasing of allotted land. While the Agua Caliente tribe has enacted its own possessory interest tax, it has never attempted to assess or collect the tax.

There were no stipulated facts addressing the Agua Caliente tribe's view of the voter-approved taxes. Nor were there any stipulated facts pertaining to CRIT's form of governance, attempts to impose taxes or raise revenues by CRIT, CRIT's provision of services, or CRIT's view of local taxes.

C. *Expert Testimony Regarding Economic Harm to the Agua Caliente Tribe*

In addition to the stipulated facts, plaintiffs called an expert in tribal government and tribal economic development. Pursuant to a discovery order, the expert's testimony was limited to the economic impact of the possessory interest tax on the Agua Caliente tribe. The expert opined that the possessory interest tax interferes with the Agua Caliente tribe's sovereignty and deprived it of valuable economic development tools. In the expert's view, the possessory interest tax should be considered a large tax because it is reoccurring and imposed each year. The expert explained that, should the Agua Caliente tribe impose its own possessory interest tax, the additional tax would decrease the leasehold value of allotted land over time. As a result, the expert believed that the county's possessory interest tax deterred the Agua Caliente tribe from imposing its own possessory interest tax and thereby deprived the Agua Caliente tribe of a source of revenue to fund its own services.

8

D. *Statement of Decision and Judgment*

The trial court issued a tentative decision concluding that the challenged taxes were not expressly preempted by statute and the balance of interests under *Bracker* did not support a finding of preemption under federal law. Plaintiffs did not request any further clarification on these issues, but they requested a statement of decision based upon the trial court's failure to address a purported "infringement test" set forth in *Williams*. In response, the trial court issued a statement of decision concluding that plaintiffs had not met their burden to show how the balance of interests necessary to support a finding of preemption would be any different under *Williams*. On October 9, 2019, judgment was entered in favor of the county.

### III. DISCUSSION

A. *Issues Presented and Standard of Review*

On appeal, plaintiffs contend the judgment must be reversed because both the possessory interest tax and the voter-approved taxes at issue are preempted by federal law for three, independent reasons: (1) the taxes are expressly preempted under section 5108; (2) the taxes are impliedly preempted under the interest balancing test articulated in *Bracker*; and (3) the taxes are impliedly preempted under a purported infringement test established in a line of judicial authorities following *Williams*, which plaintiffs contend provides a separate framework for finding preemption without a balancing of interests.

" 'We apply a de novo standard of review . . . because federal preemption presents a pure question of law [citation].' [Citation.] However, 'when conflicting inferences may be drawn from undisputed facts, the reviewing court must accept the inferences

9

drawn by the trier of fact so long as it is reasonable.' [Citation.] 'The party who claims that a state statute is preempted by federal law bears the burden of demonstrating preemption.' " (*Herpel*, *supra*, 45 Cal.App.5th at p. 100.) Based upon the record before us, we disagree that plaintiffs have established that the taxes are preempted, and we affirm the judgment.

B. *Express Preemption Under the Indian Reorganization Act (25 U.S.C. former § 465)*

We first address plaintiffs' argument that section 5108 expressly preempts any state or local taxes on the possessory interests of leased allotted land or tribal trust land. Section 5108 authorizes the Secretary of the Interior to acquire "any interest in lands, water rights, or surface rights to lands . . . for the purpose of providing land for Indians," and further provides that "any lands or rights. . . acquired pursuant to this Act . . . shall be exempt from State and local taxation." (§ 5108.) It is undisputed that the tribal land at issue in this case was set aside for the Agua Caliente tribe and CRIT decades prior to the enactment of the IRA.[4] As we explained in *Herpel*, under a plain reading of section 5108, land set aside or taken in trust through some means other than that provided in the IRA—such as the land underlying plaintiffs' leases here—are not "acquired pursuant to"

---

[4] While CRIT voted to adopt the IRA in 1934, the nature of CRIT land located in California remains unsettled. As the parties stipulated, the Colorado River reservation was expanded into territory located in California by executive order in 1873 and 1874. However, that executive order appears to conflict with an earlier act of Congress expressly prohibiting the President from establishing more than four reservations in California. The parties admit that the western boundary of the Colorado River reservation remains unresolved, and the Secretary of the Interior does not exercise authority over the alleged CRIT land located in California in the same manner as land otherwise acquired under the IRA.

the IRA and are not subject to the exemptions provided in section 5108. (*Herpel*, *supra*, 45 Cal.App.5th at pp. 118-122.)

Plaintiffs here do not claim that the law or the facts have changed since our decision in *Herpel* but instead urge us to reexamine the issue because they have presented a new legal argument that has yet to be considered. Specifically, plaintiffs point out that the IRA includes a provision indefinitely extending any existing periods of trust until Congress provides otherwise (25 U.S.C. § 5102); and, that in 1990, Congress enacted an amendment providing that this provision would apply to all Indian tribes, all land held in trust for Indians, and all land owned by Indians subject to restrictions on alienation (25 U.S.C. § 5126). Plaintiffs argue that this amendment represented the acquisition of a new trust right and, under a broad reading of section 5108, "the acquisition of 'interests' and 'rights' under the IRA brings the 'land' within the statute, even if the land itself was not acquired under the Act." We find this argument unpersuasive.

First, even if plaintiffs' proposed interpretation represents a plausible reading of these statutes, that does not mean that such an interpretation is reasonable. It is true that "[a]mbiguities in federal law have been construed generously in order to comport with . . . traditional notions of sovereignty and with the federal policy of encouraging tribal independence" and, as such, a statute need not contain an express statement of preemption in order to preempt conflicting state laws. (*Bracker*, *supra*, 448 U.S. at pp. 143-144.) "At the same time any applicable regulatory interest of the State must be given weight . . . and 'automatic exemptions "as a matter of constitutional law" ' are unusual." (*Bracker*, at p. 144.) Thus, it is a rare case in which a statute should be

11

interpreted to provide automatic exemptions to state laws on constitutional grounds, and courts should not adopt such an interpretation without some clear indication that Congress intended the statute to have such preemptive effect.

Second, the express terms of the relevant statutes do not support the interpretation urged by plaintiffs. In amending the IRA, Congress extended the provisions of section 5102 to all Indian tribes and all lands held in trust. (25 U.S.C. § 5126.) However, section 5102 by its very terms applies only to "existing periods of trust," extending those existing periods of trust indefinitely. (25 U.S.C. § 5102.) Given this language, the 1990 amendment cannot reasonably be interpreted as creating a new trust right. Even as extended by section 5126, the express terms of section 5102 still require an "existing trust right" to have any application.

Third, there is no evidence that Congress intended to enact a sweeping change in policy by way of the amendment relied upon by plaintiffs. As the Supreme Court has recognized, section 5108 represents "a mechanism for the acquisition of lands for tribal communities that takes account of the interests of others with stakes in the area's governance and well-being. . . . The regulations implementing [section 5108] are sensitive to the complex interjurisdictional concerns that arise when a tribe seeks to regain sovereign control over territory. Before approving an acquisition, the Secretary must consider, among other things, the tribe's need for additional land; '[t]he purposes for which the land will be used'; 'the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls'; and '[j]urisdictional problems

12

and potential conflicts of land use which may arise.' " (*City of Sherrill v. Oneida Indian Nation* (2005) 544 U.S. 197, 220-221.)

If, as plaintiffs claim, the 1990 amendment constitutes the acquisition of a new right within the meaning of section 5108, such an interpretation would represent a dramatic expansion of the exemption contained in section 5108 without consideration of the recognized "sensitive and complex interjurisdictional concerns" that the Secretary of the Interior is otherwise required to balance before taking land into trust pursuant to that statute. Such an interpretation essentially renders meaningless the language limiting section 5108's exemption to land "acquired pursuant to" that statute. There is no indication that this amendment, which does not even mention section 5108, was intended to enact such a drastic change to the established statutory scheme.

Finally, "[w]hile a later enacted statute . . . can sometimes operate to amend or even repeal an earlier statutory provision . . . , 'repeals by implication are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.' [Citation.] We will not infer a statutory repeal 'unless the later statute " 'expressly contradict[s] the original act' " or such a construction " 'is absolutely necessary [to give the later statute's words] any meaning at all.' " ' " (*Nat'l Ass'n of Home Builders v. Defenders of Wildlife* (2007) 551 U.S. 644, 662.) As already noted, plaintiffs' interpretation of the 1990 amendment to the IRA would effectively render the "acquired pursuant to" language in section 5108 meaningless and disrupt the long established statutory and regulatory scheme for acquiring land into trust within the meaning of section 5108. We see no reason to adopt such an interpretation where the

13

amendment identified by plaintiffs does not expressly contradict any provisions of section 5108 and does not contain any express language indicating Congress intended to repeal any provisions of section 5108 or alter the interpretation or implementation of that section. Nor have plaintiffs identified any conflict in the ability to implement Title 25 United States Code section 5126, such that the traditional understanding of section 5108 must be reconsidered.[5]

In the absence of any explicit intent to depart from the interpretation or implementation of section 5108, we will not interpret the 1990 amendments as an expansion of section 5108's provisions preempting state and local taxation, and we decline to depart from our previous interpretation of section 5108 as expressed in *Herpel*.

C. *Implied Preemption Under* Bracker *Balancing Test*

Alternatively, plaintiffs claim that, even in the absence of express preemption, the possessory interest tax and voter-approved taxes at issue in this case are preempted under

---

[5] If anything, plaintiffs' proposed interpretation of Title 25 United States Code section 5126 cannot be reconciled with the currently recognized authority of the Secretary of the Interior as expressed in *Carcieri v. Salazar* (2009) 555 U.S. 379. In *Carcieri,* the Supreme Court concluded that the Secretary of the Interior was not authorized to take land into trust under the authority provided in section 5108 on behalf of the Narragansett Indian tribe because Congress's intent was only to authorize taking land into trust for the benefit of tribes under federal jurisdiction at the time of the IRA's enactment, and the Narragansett Indian tribe was not recognized by the federal government until 1983. (*Carcieri*, at pp. 384, 395-396.) We observe that section 5126, enacted as an amendment in 1990, applies to all Indian tribes. Thus, while the Supreme Court did not pass on the precise question presented in this case, the Supreme Court's view in *Carcieri* that Congress did not intend to authorize the Secretary of the Interior to take land into trust for the benefit of all Indian tribes under section 5108, cannot be reconciled with plaintiffs' view that Congress intended its 1990 amendment—which applies to all Indian tribes—to constitute the acquisition of a new trust right within the meaning of section 5108.

federal law when the balance of competing federal, tribal, and state interests are considered under the test articulated in *Bracker*. We disagree.

In *Bracker*, the Supreme Court explained that "there is no rigid rule by which to resolve the question whether a particular state law may be applied to an Indian reservation or to tribal members." (*Id.* at p. 142.) Instead, when evaluating the state's regulation of non-Indians in relation to activities that affect tribal interests, a court must "examine[] the language of the relevant federal treaties and statutes in terms of both the broad policies that underlie them and the notions of sovereignty that have developed from historical traditions of tribal independence. This inquiry is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." (*Id.* at pp. 144-145.)

In this case, we need not discuss the application of the *Bracker* test in detail. Our recent decision in *Herpel* considered the balance of federal, tribal, and state interests with respect to the validity of the same possessory interest tax as applied to allotted land and tribal trust land held for the benefit of the Agua Caliente tribe. (*Herpel*, *supra*, 45 Cal.App.5th at pp. 108-116.)

As in *Herpel*, plaintiffs here argue the federal interest in preempting local and state taxation is strong because federal law comprehensively regulates the leasing of Indian land, citing to the extensive federal regulations governing the leasing of Tribal Land. However, after consideration of the same regulations in *Herpel*, we did "not consider the

15

nature of the federal government's interest in prohibiting the possessory interest tax to strongly support preemption." (*Herpel*, *supra*, 45 Cal.App.5th at p. 111.) Further, to the extent that this case includes consideration of the federal interest involved in leasing CRIT land, such interest would be even more attenuated, since the parties stipulated that Congress explicitly excluded CRIT land located in California from being subject to the Secretary of the Interior's authority to approve leases. Because plaintiffs cite to the same regulatory scheme in support of the same arguments we already considered and rejected in *Herpel*, we see no reason to depart from the conclusion we reached in that case with respect to the federal government's relatively weak interest in preemption of local taxes at issue here.[6]

With respect to the tribal interests involved, plaintiffs here assert that the county's taxes create an economic disincentive preventing the tribes from imposing their own taxes, thereby depriving the tribes of revenue. Plaintiffs acknowledge that this argument is essentially identical to the one we considered and found unpersuasive in *Herpel*, but they suggest that we should reconsider our analysis because they have provided additional evidence in the form of an expert who estimated that the Agua Caliente tribe's imposition of its own possessory interest tax could result in the value of future leases on

---

[6] As in *Herpel*, we note that our view that the nature of the federal government's interest in prohibiting the possessory interest tax as not being sufficiently strong as to support preemption puts us in disagreement with courts that have determined otherwise. (See *Seminole Tribe of Florida v. Stranburg* (11th Cir. 2015) 799 F.3d 1324, 1341; *Segundo v. Rancho Mirage* (9th Cir. 1987) 813 F.2d 1387, 1392; *Agua Caliente Band of Cahuilla Indians v. Riverside Cty*., (C.D. Cal., June 15, 2017, No. ED CV 14-0007-DMG (DTBx)) 2017 U.S. Dist. Lexis 92592 at p. *35, affd. mem., *supra*, 749 Fed.Appx. 650.)

allotted land to fall by over 40 percent, making it practically impossible for the tribe to impose its own possessory interest tax.[7]  However, even accepting this testimony at face value,[8] such evidence is not sufficient to compel a conclusion different than the one we reached in *Herpel*.

As we explained in *Herpel*, "the fact that marginal demand for leases on Allotted Land or Tribal Trust Land could go down if the Tribe also collected its own possessory interest tax alone is not enough to show harm."  (*Herpel*, *supra*, 45 Cal.App.5th at p. 113.)  Thus, our decision in *Herpel* already assumed that a separate tax imposed by the tribal authority would lead to a diminution in the value of leases but nevertheless concluded that the state's interest, when compared to that of the tribal interest involved, did not warrant a finding of preemption.  The fact that plaintiffs here have presented an expert's estimate purporting to quantify that diminution in value does not add anything significant to our previous analysis.

---

**7** We point out that this argument must necessarily be limited to the plaintiffs leasing allotted land or tribal trust land held by the Agua Caliente tribe, as plaintiffs expert failed to include any discussion of the impact of any taxes on CRIT in his report and was precluded from offering any opinions pertaining to CRIT at trial.  Further, unlike the stipulated facts pertaining to the Agua Caliente tribe regarding its decision to hold its own possessory tax in abeyance, there is no similar evidence in the record regarding CRIT or its attempts to impose taxes on any of the alleged CRIT land at issue.

**8** We note that the actual diminution in value of future leases is uncertain, as plaintiffs' expert admitted on cross-examination that he did nothing to assess whether the lease values would decrease as a result of the loss of any specific services currently provided by the county or potentially increase as the result of any additional services the Agua Caliente tribe might provide to lessees in exchange for imposing its own possessory interest tax.

Finally, nothing in this case suggests that our view of the state interest in upholding the county's possessory interest tax, as well as the voter-approved taxes, should be any different from that expressed in *Herpel*. In *Herpel*, *supra*, 45 Cal.App.5th 96, we concluded that the state's interest in imposing the possessory interest tax was strong because the tax was directly connected to the provision of numerous services that were provided by the county to non-Indian lessees of allotted land or tribal trust land, such as education, fire, police, health and sanitation, road maintenance, and flood control. (*Id.* at pp. 114-115.) Thus, unlike other cases in which the state's interest was minimal, the county's possessory interest tax represents a situation " 'in which the State seeks to assess taxes in return for governmental functions it performs for those on whom the taxes fall.' " (*Id.* at p. 116.) The undisputed facts in this case are no different than those presented in *Herpel* with respect to the types of services funded by the possessory interest tax, the nature of the services provided by the county as compared to those provided by the tribes, and the availability of services to all persons residing within the county regardless of whether they reside on leased allotted land or tribal trust land.

Our view of the state interest with respect to the possessory interest tax expressed in *Herpel* would apply equally to the voter-approved taxes in this case, since the parties stipulated these taxes fund specific governmental entities providing specific governmental services available to all residents within the entities' geographic boundaries, regardless of whether the recipient of services is a lessee of allotted land or tribal trust land. Thus, the state interest with respect to the voter-approved taxes

18

challenged in this case is no different than that found sufficient to uphold the tax in *Herpel*.

Plaintiffs argue that the availability of intergovernmental agreements is a preferable alternative to the imposition of the challenged taxes. However, we do not believe the record in this case is sufficient for us to consider this in the context of the balancing of interests required under *Bracker*. While the evidence shows the Agua Caliente tribe has successfully entered into intergovernmental agreements in other contexts, there was no evidence to suggest that it could successfully do so—or even had any desire to do so—with respect to the services funded by the possessory interest and voter-approved taxes in this case. Nor was there any evidence regarding the practical feasibility or financial impact of such agreements given the checkerboard, interspersed nature of the Agua Caliente tribe's reservation within the county.

Ultimately, our role in conducting an interest balancing test is to determine whether the state has identified a legitimate interest in exercising the challenged authority and, if so, the relative strength or weakness of such interest when compared to the competing federal and tribal interests involved. The fact that the state might be able to address the same interests through alternative means in the absence of these taxes does not reduce the legitimacy of the interests identified in this case or the strength of such interests when compared with relatively weaker federal or tribal interests identified by plaintiffs. We therefore disagree that the taxes challenged in this case are impliedly preempted under the interest balancing test articulated in *Bracker*.

D. *Implied Preemption for Infringement on Tribal Sovereignty*

Finally, plaintiffs argue that separate and distinct from the preemption analysis under *Bracker*, the taxes at issue here "strike so deeply at the heart of Indian independence and self-governance that it is preempted for that reason alone, without any balancing required," citing principally to *Williams*, *supra*, 358 U.S. 217, in support of this argument. We disagree that *Williams* provides an alternative framework for finding federal preemption in this case.

In *Williams*, the Supreme Court concluded that principles of federal preemption prohibited a state court's exercise of jurisdiction over civil suits arising from transactions that occur within tribal territory and involve members of a tribe. (*Id.*, *supra*, 358 U.S. at pp. 218, 223.) However, since *Williams*, numerous courts have concluded that the imposition of a tax does not necessarily infringe on tribal sovereignty in a manner that warrants a finding of preemption, including the Supreme Court (*Wash. v. Confederated Tribes of Colville Indian Reservation* (1980) 447 U.S. 134, 156 [A state "does not infringe the right of reservation Indians to 'make their own laws and be ruled by them,' " within the meaning of *Williams* "merely because the result of imposing its taxes will be to deprive the Tribes of revenues."]); the United States Court of Appeals for the Ninth Circuit (*Agua Caliente Band of Mission Indians v. Riverside County*, *supra*, 442 F.2d 1184 [possessory interest tax not preempted by federal law]); and this court (*Palm Springs Spa*, *Inc. v. County of Riverside*, *supra*, 18 Cal.App.3d 372 [same]) and (*Herpel*, *supra*, 45 Cal.App.5th 96 [same].) Thus, we reject any suggestion that the imposition of

20

a tax, in and of itself, can represent such an infringement to tribal sovereignty that federal preemption is required absent a balance of competing interests.

Further, we note that the Supreme Court has strongly suggested the argument plaintiffs advance here is not tenable. In *Arizona Dep't. of Revenue v. Blaze Constr. Co.* (1999) 526 U.S. 32, the high court expressed the belief that its precedents "squarely foreclose" any argument that imposition of a state tax "infringes on [a tribe's] right to make [its] own decisions and be governed by them and that this is sufficient, by itself, to preclude application" of a state tax under *Williams*. (*Id.* at p. 37, fn. 2.) More recently, the Supreme Court has cited *Williams* as one of "the cases identified in *Bracker* as supportive of the balancing test." (See *Wagnon v. Prairie Band Potawatomi Nation* (2005) 546 U.S. 95, 111.) These authorities strongly suggest that the Supreme Court does not view *Williams* or its progeny as an alternative framework for finding preemption of local or state taxes absent a balancing of interests.

As we have already concluded, the balancing of interests under *Bracker* supports upholding the validity of the taxes challenged in this appeal. We believe that the question of whether such taxes are impliedly preempted under federal law is properly resolved by a balancing of interests as articulated in *Bracker*, and we are not persuaded that a separate infringement test that does not require a balancing of interests can be properly applied in this case. As we found in *Herpel*, the balance of interests does not support a finding of federal preemption, and the trial court in this case did not err when it reached the same conclusion.

21

## IV.  DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

FIELDS  
                                          J.

We concur:


McKINSTER  
              Acting P. J.


MILLER  
              J.

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

**<u>ORDER</u>**

LEONARD ALBRECHT et al.,
   Plaintiffs and Appellants,

   v.

COUNTY OF RIVERSIDE,
   Defendant and Respondent;

DESERT WATER AGENCY, et al.,
   Interveners and Respondents.

_____

PATRICIA ABBEY, et al.,
   Plaintiffs and Appellants,

   v.

COUNTY OF RIVERSIDE,
   Defendant and Respondent;

DESERT WATER AGENCY, et al.,
   Interveners and Respondents.

_____

E073926

(Super.Ct.No. PSC1501100 &
RIC1719093)

The County of Riverside

THE COURT

The request for publication of the nonpublished opinion filed in the above matter September 1, 2021, is GRANTED. The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(1), (4), (6), and (7).

IT IS SO ORDERED that said opinion filed August 13, 2021, be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

FIELDS _____

J.

We concur:


McKINSTER _____

Acting P. J.

MILLER _____

J.

2